NEW YORK,
Oct. 1812.

COOPER *against* STOWER, IMPLEADED WITH OTHERS.

THIS was an action of trespass, for cutting and carrying away timber from the plaintiff's land. The plaintiff's declaration contained four counts. The defendant pleaded, 1. Not guilty; 2. *Liberum tenementum*, with a notice of special matter to be given in evidence at the trial.

The cause was tried before Mr. Justice *Yates*, at the last circuit in *Clinton* county.

The plaintiff proved that the defendant, in the years 1810 and 1811, cut from the lot of land in question, 500 spars, worth 2 dollars each, and 30,000 feet of square timber, worth from 20 to 25 dollars per thousand, being the estimated value of the timber while standing.

The title of the plaintiff to lot No. 7. which included the land on which the timber was cut, was admitted. The witnesses stated that the land was of little or no value, without the timber.

The defendants gave in evidence, a written agreement between the plaintiff and defendants, *Thomas Stower, Jonathan Lynde,* and *A. Bonney,* dated in *December,* 1809, by which the plaintiff covenanted and agreed to sell to the said defendants lot No. 7. in the town of *Peru,* in the county of *Clinton,* for the sum of 1,275 dollars, payable in four equal payments, the first to be made on the 1st *March,* 1810, the second on the 1st *October,* 1810, the third on the 1st *October,* 1811, and the fourth on the 1st *October,* 1812, the three last payments bearing interest; that if the defendants should pay the plaintiff 1,275 dollars, in the manner mentioned, with interest, and also all taxes, charges and assessments on the land, *then,* and in that case, the plaintiff covenanted and agreed to convey to the defendants the said lot.

The defendants also gave in evidence, an agreement executed by *Stower* alone, dated in *December,* 1809, by which he acknowledged to have received from the plaintiff a contract executed by the plaintiff, and the counterpart thereof, (stating the substance of the contract,) and also a bond, conditioned for the payment of the said sums, to be executed by himself and the said *Lynde* and *Bonney* to the plaintiff; the counterpart of the contract and the bond, as soon as they should be executed by the said *Lynde, Bonney,* and himself, the defendant, *Stower,* promised to

VOL. IX.                    U u

*[Margin note:]*
COOPER
v.
STOWER.
A contract to sell and convey land, upon the performance of certain acts, to be performed by the purchaser at a future period, does not, of itself, contain a license to enter; much less a license to enter and commit waste, by destroying the timber; nor does an agreement made with one of several purchasers, that *until* all of them had executed the contract of purchase, and a certain bond for the performance of its covenants, " no timber should be cut on the lot," imply a license to the purchasers, after the contract and bond are executed, to commit waste, by cutting and carrying away the timber. The most that can be implied by such a contract and agreement, is a permission to the purchasers to enter, in the mean time, as tenants at will, and occupy the land in a reasonable manner as tenants at will might lawfully do.

NEWYORK, return to the plaintiff; and that the same should be executed as
Oct. 1812 soon as the defendant returned to *Essex* county. The defend-
COOPER ant further promised and agreed, that *until the said contracts*
v. *and the said bond were executed by himself and Lynde and Bon-*
STOWER. *ney, no timber should be cut on the said lot,* by or under the au-
thority or direction of them.

The contract and bond were executed by the defendants,
*Lynde* and *Bonney,* according to the agreement of *Stower,* and
were returned to the plaintiff, by the next mail.

It did not appear that any part of the purchase-money had ever
been paid.

The defendants rested their defence, on the ground that a *li-
cense* to *enter* was to be inferred from the contract.

A verdict was taken for the plaintiff, for 1,600 dollars, by con-
sent, subject to the opinion of the court on a case containing the
facts above stated.

The case was submitted to the court without argument.

*Per Curiam.* A contract to sell and convey land, upon the
performance of certain acts, thereafter to be performed, does not,
of itself, contain a license to enter, and especially a license to
enter and commit waste, by destroying the timber. Such an in-
ference would be very unreasonable. Upon that supposition, a
contract to sell a house and lot, with valuable buildings thereon,
would authorize the party to enter, before the happening of the
contingency, and pull down the buildings. This very point was
decided in the case of *Sufferns* v. *Townsend.* (*Ante,* 35.)
Nor does the covenant from one of the defendants to the
plaintiff, executed at the time of the contract, that until the execu-
tion of the contract and bond by the defendants, " no timber
should be cut upon the lot," contain a license on the part of the
plaintiff to the defendants, to commit waste. There were other
covenants and provisions in that instrument sufficient to induce
the plaintiff to accept of it ; and it is not consistent with the due
security of real property, and the essential interests of individuals,
that so erroneous a license, as the one contended for by the de-
fendants, should be inferred and supported from the mere fact
of the acceptance by the plaintiff, of an instrument containing a
covenant not to cut timber, until the happening of such an event.
To pass a greater interest in land than one to be held at will,
the writing creating it must be signed *by the party creating*

*the same.* This is the language of the statute of frauds. The utmost that could be implied, from the contract executed by the plaintiff, and from the contract accepted by him is, that the defendants were at liberty to enter, in the mean time, as tenants at will, and to occupy the land in a reasonable manner as other tenants at will might do. Cutting down the timber, beyond what was requisite for the use and improvement of the farm, was waste, and a determination of the tenancy at will. By withholding a deed, until the payment of the money, the plaintiff meant to hold the land as a security for the debt; and it would cease to be a security, if the defendants might lawfully, under the contract, render the land useless and of no value, by stripping it of all its timber. The contracts in the case must be construed reasonably and consistently with the rights of both parties.

The plaintiff is, accordingly, entitled to judgment.

Judgment for the plaintiff.