## PAUL KELLOGG and others *vs.* JAMES KELLOGG.

To recover in ejectment, under a purchase of the premises at a sheriff's sale on a judgment against the defendant, it is sufficient for the plaintiff to show the defendant in possession at the time of the recovery of the judgment against him, and a continued possession in him from that time to the time of the commencement of the suit, and that the plaintiff acquired the title of the defendant, under the sheriff's sale.

Under a naked contract of purchase, which is silent on the subject of possession, the purchaser acquires no right to the possession, and no right of entry will follow from it.

If the purchaser, in such a case, enters in pursuance of a parol license from the vendor, the possession thus acquired is an interest in the land distinct from the interest acquired under the contract, and is subject to sale on an execution.

Where a person has taken from another a contract for the purchase of land, and has treated him as the owner, he will not be permitted, in an action of ejectment, brought by the vendor, to set up his possession as adverse to the title of his vendor; but his possession will be deemed consistent with the title of his vendor.

Where a contract for the sale of land does not give to the purchaser any right of entry, but he is in possession of the premises, at the time of bringing an ejectment against him, his possession will not be assumed to be under his contract for the purchase, but will be referred to some other right or contract.

Although, for some purposes, the entry of a purchaser upon the purchased premises is called an entry as by a tenant at will, yet the estate of the vendee can not be said to be an estate at will, or at sufferance. *Per* ALLEN, J.

The possession of a vendee in possession under a contract of purchase may be likened to that of a tenant, for many purposes, yet his *estate* is *sui generis*, and does not come within the act exempting estates at will or by sufferance from sale on execution.

A copy of an answer in chancery, served on the plaintiff's solicitor as such, can not be given in evidence in a subsequent suit between the same parties, upon a witness testifying that he has compared only a portion of said copy with the original on file, leaving the remainder not compared.

As a copy of the answer on file, such copy is to be proved in the same manner as other transcripts, viz. by a witness who has compared the copy, line for line, with the original, or who has examined the copy while another person read the original.

Counsel will be excused from producing deeds in their possession and which they have received in their character as counsel; and from testifying as to their contents.

Where, in ejectment, the plaintiff proves title to a smaller quantity of land than

Kellogg *v.* Kellogg.

he has claimed in his declaration, he is entitled to recover according to the proof; and the declaration may be amended accordingly.

In ejectment for lands held in common, it is not necessary that all the tenants in common should unite in the action; except when it is brought as a substitute for a writ of right.

It rests in the sound discretion of the judge, at the trial of a cause, to admit further evidence, or not, after the trial has once closed.

THIS was an action of ejectment, tried at the Oneida circuit in July, 1848, before Justice GRIDLEY. The declaration contained three counts. In the first count the premises were claimed as belonging to the plaintiff Pearl Kellogg, in fee. In the 2d count the plaintiffs Lester Barker, Rufus Mills and Alonzo Bradner claimed an undivided seven-elevenths and two-thirds of one-eleventh part of the premises, in fee. And in the 3d count the plaintiff Pearl Kellogg claimed an undivided two-elevenths of the premises described, in fee. The plea was the general issue. On the trial, the plaintiffs gave in evidence (1.) The record of a judgment in the supreme court in favor of Charles P. Kirkland and others against James Kellogg (the defendant) for $500 of debt and $7 of damages and costs, docketed August 28, 1841. (2.) The docketing of said judgment in the office of the clerk of Oneida county on the 1st day of September, 1841. (3.) An execution on said judgment, issued to the sheriff of Oneida, tested July 31, 1843, and returnable in sixty days, with the sheriff's endorsement thereon that the same was satisfied. (4.) The sheriff's certificate of sale (by virtue of said execution) of the premises in question to Charles P. Kirkland, dated January 30, 1844. (5.) The assignment of said certificate by Charles P. Kirkland to the plaintiff Pearl Kellogg, dated February 17, 1845, duly acknowledged and filed in the clerk's office of Oneida county, on the 8th day of Sept. 1845. (6.) A deed of the premises in question by the sheriff of Oneida to said Pearl Kellogg, dated May 1, 1845, and also another deed by the sheriff to said Pearl, dated Sept. 9, 1845, the first of which said deeds was recorded on the 2d day of May, 1845, and the other was recorded on the 11th day of November, 1845. It was here admitted that the premises sold were the premises

in controversy, and constituted the homestead of Solomon Kellogg deceased, willed to his wife for life and by her occupied many years. Aaron Kellogg testified that he was a brother of the defendant and the plaintiff Pearl Kellogg; that he knew the premises; the defendant resided on them near Clinton; that he resided there in 1843 and 1844, occupying the farm, and did before that time for some years, and also in 1845, 1846, &c. The plaintiffs here rested.

The defendant then gave in evidence a contract between the said Pearl Kellogg and the defendant in the words and figures following: "This agreement, made the 8th day of May, 1837, between Pearl Kellogg of the first part, and James Kellogg of the second part, witnesseth, that for and in consideration of the covenants and stipulations hereinafter contained to be done and performed by the said party of the second part, said party of the first part agrees to deed the said party of the second part the lot of land this day by him bought of Ruth Kellogg and on which she has heretofore lived, being situated in the town of Kirkland in the county of Oneida, and containing about 62 acres of land, which was bequeathed to her by her husband, Solomon Kellogg, A. D. 1795. Said party of the second part covenants to support Ruth Kellogg where she may choose to reside, and to provide her with every thing necessary and proper for her comfortable maintenance during her life; that he will furnish her with bed and board, food and raiment such as will make her condition comfortable and her life agreeable; that during her illness he will furnish her with proper medical aid, and that during her inability, either from the infirmities of age or the effects of sickness, he will provide her with suitable help and attendance, and that he will pay all her reasonable expenses; and that in case she shall choose to lodge and eat by herself, and have a room of commodious size and situation for herself, he will see to it that her wishes are complied with in that behalf, and that during her life he will provide for and maintain her comfortably. Said party of the first part covenants to give a good and sufficient deed of the premises aforesaid after the decease of the said Ruth Kellogg, whenever the same shall be required of him, in case

Kellogg *v*, Kellogg.

the said party of the second part shall have faithfully performed the stipulations of this contract, and have during the life of the said Ruth supported her in manner aforesaid; and in case of his neglect to support her in manner aforesaid, this contract to be null and void.   In witness," &c.

The defendant's counsel then insisted, that being in possession under the said written contract, his interest could not be sold on execution, and therefore no interest or title was acquired under the said sheriff's sale and deed.   To this it was objected by the plaintiffs' counsel, that it did not appear that the defendant was in possession under the contract, and that the contract did not authorize an entry or possession under it, and so the court ruled.   And thereupon, for the purpose of proving that the said defendant was in possession under the said written contract, the defendant's counsel offered to prove that fact by the answer of Pearl Kellogg to a bill filed by James Kellogg in the late court of chancery, before the vice chancellor of the fifth circuit, which answer he proposed to prove by giving in evidence a paper which had been served on the solicitor of James Kellogg as a copy, and that the solicitor had compared the same with the answer on file so far as he thought the subject matter rendered it material, leaving however some forty folios of the answer which he did not compare.   This evidence was objected to by the plaintiff's counsel, (1.) On the ground that the said answer in chancery was not so proved as to be admissible in evidence; the answer offered being the copy served in said chancery suit by the said Pearl's solicitor on the said defendant's solicitor, and the solicitor for said James testifying that he had compared about forty folios of said copy with the original on file, and that about forty folios of it had not been compared, and he could not swear that it was a copy.   (2.) On the ground that said evidence so offered was in itself irrelevant and incompetent, for the reason that the written contract not giving any right of entry or possession, the sale on execution could not have been of any interest under said contract.   The evidence was rejected, on both grounds, and the defendant's counsel excepted.   The defendant's counsel then insisted that the interest of James Kel-

logg which was sold on execution was that of a tenant at will, or by sufferance, and therefore not capable of being so sold, and offered to prove that Pearl Kellogg had regarded and treated James Kellogg as a tenant at will and by sufferance in and by his said answer, and relied on his offer of the said answer in evidence to show such fact; which, on being objected to, was rejected for the reasons aforesaid; the judge holding the evidence offered of the said answer as before mentioned inadmissible, and that it did not appear that the interest of the said James Kellogg was that of a tenant by sufferance or at will only, to which decision the counsel for the defendant excepted. The defendant then offered to prove that since the execution and delivery of the said sheriff's deed, and before the commencement of this suit, the plaintiff Pearl Kellogg had conveyed two-elevenths of the premises to the other plaintiffs. To the admission of this evidence the counsel for the plaintiffs objected, but the said justice admitted the evidence, and the counsel for the plaintiffs excepted. The defendant then proved that he had duly served notice to produce all and every deed or deeds, releases, conveyances or other instruments conveying or in any manner making over or securing from the said plaintiff Pearl Kellogg to the other plaintiffs the premises in controversy, or any part thereof; and no such paper or papers being produced, he called as a witness one of the plaintiffs, Lester Barker, who being sworn, testified that the plaintiff Pearl Kellogg never conveyed to him, in any way, his interest, or any part of his interest, in the premises in controversy. That said Pearl Kellogg was reputed to own two-elevenths of the premises. That the witness never received any deed of the premises, or any part thereof, from Pearl Kellogg, and did not know that he ever made any such deed to the witness and the other plaintiffs. That there were eleven shares, and Abraham and Aaron Kellogg were supposed to have a right in the premises, and the witness, with the plaintiffs Bradner and Mills, bought several of those shares of them, and Pearl Kellogg quit-claimed or released his interest in those shares; that they also bought of others who were supposed to have an interest, in all five-elevenths and two-thirds of one-eleventh, and Pearl Kel-

Kellogg *v.* Kellogg.

logg gave them releases of all his interest in those shares of the persons of whom they purchased. The whole of the shares so released was seven-elevenths and two-thirds of one-eleventh. That witness did not know that he had any of those releases or quit-claims in his possession ; that he had seen them, and had them, or part of them; that Mr. Kirkland, his counsel, might have them; witness delivered them, or a part of them to him. And thereupon the counsel for the defendant called upon the said counsel of the plaintiffs to produce the same, and charged that the same, or some of them, were in his possession, and then in court. He then proceeded to examine C. P. Kirkland, the counsel for the plaintiffs, (who had already been sworn as a witness,) in reference to the possession of said papers and the contents of them, but the said counsel stated that he could not say that he had any such papers as the said Barker described, and that he had not any releases or quit-claims in his possession or under his control, except such as he had received in his capacity as counsel for the plaintiffs, and thereupon he declined stating the contents, or producing the same. And the said justice decided that he could rely upon his privilege as counsel, and was not bound to produce them, nor to divulge their contents, if the same were received by him as a confidential communication ; and the counsel for the defendant excepted. Thereupon the said witness Lester Barker being further examined by the defendant's counsel, testified that in 1845 he bought two-elevenths of the premises of Aaron and Abraham Kellogg, who were supposed to have an interest, and took a deed thereof from them to himself and the other plaintiffs, Bradner and Mills; that Pearl Kellogg, at the same time, gave them a release or quit-claim of all his interest in the two-elevenths which Abraham and Aaron conveyed to them; that it was the agreement that he should do so, and witness supposed he did; he knew it was a quit-claim of all his interest in two-elevenths of the premises, and he thought it said the two-elevenths which Abraham and Aaron had deeded to them. At a later date during the same season, the witness and Bradner and Mills bought two-elevenths more of Harvey Kellogg, another brother, being his own share and the share of his

brother Green Kellogg, for his interest in these two-elevenths; Pearl Kellogg at the same time giving them a release or quit-claim similar to the former one. During the same season the witness and Bradner and Mills also bought one-eleventh which was owned by the heirs of Henry Kellogg deceased, another brother, and the interest which was owned by one of the heirs of Silas Kellogg deceased, another brother, and for these shares Pearl Kellogg also gave them releases or quit-claims similar to the former ones. In all he released his interest in seven-elevenths and two-thirds of one-eleventh of the said premises. During that season the witness and Bradner and Mills bought seven-elevenths and two-thirds of one-eleventh of the premises, but the witness did not recollect that Pearl Kellogg gave them any releases or quit-claims, except those conveying his interest in the said seven-elevenths and two-thirds of one-eleventh ; he thought the names of the persons of whom they bought were mentioned in these respective quit-claims. On his cross-examination the witness testified that Pearl Kellogg never, to his knowledge, in any manner, sold or agreed to sell to him any other part of the premises, except as before mentioned. Whereupon the counsel for the defendant insisted that the plaintiff Pearl Kellogg having sold to the other plaintiffs some part of his interest in the premises was not entitled to recover any thing under the first count of his declaration, and only two equal undivided eleventh parts under the third count. He also insisted that the pleadings and evidence showing that a part of the premises in controversy belonged to some person other than the plaintiffs, a part only of the several tenants in common having brought the action, they should be nonsuited, or could not recover. And thereupon the defendant rested, and the judge suggested to the counsel to take a general verdict subject to the opinion of the court on the several questions of law arising in the case, which was agreed to by the counsel. The counsel for the defendant then recalled the witness Lester Barker to the stand, and offered to prove the ownership of the premises in controversy by one Solomon Kellogg, the ancestor of the plaintiff Pearl Kellogg and of the defendant, his will and his heirs, with the view

---

---

of showing title out of the plaintiffs; it being conceded, or appearing, that said Solomon Kellogg died long before the sheriff's sale hereinbefore mentioned. The counsel for the plaintiffs objected to the admission of this evidence, on the ground (1) That the offer was made too late ; (2) That the testimony itself was irrelevant and incompetent, for the reason that it related to matters that occurred long before said sheriff's sale ; and the said justice rejected the evidence on both grounds, and the counsel for the defendant excepted.

A general verdict was then taken for the plaintiffs, subject to the opinion of the court on a case to be made, with power to the court to modify the verdict and apply it to one or more counts, or give judgment for the defendant, or grant a new trial, as might by them be deemed right ; with liberty to either party to turn the same into a bill of exceptions or special verdict, to correct any errors of law that might be committed.

*C. P. Kirkland,* for the plaintiffs.   I. The testimony offered, to show that the defendant was in possession under the contract, was properly rejected.   (1.) The copy of the answer was wholly inadmissible.   (*Belden* v. *Davis,* 2 *Hall,* 433.  1 *Phil. Ev.* 386, (*C. & H. ed.*)   *Cowen & Hill's Notes,* 719.)   (2.) The evidence itself was incompetent.   (1 *R. S.* 736, 745, §§ 4, 5, 6. 2 *Id.* 598, 599.  9 *John. Rep.* 35.   *Talbot* v. *Chamberlain,* 3 *Paige,* 220.  6 *Hill,* 525.)   II. The testimony as to the defendant being tenant at will or by sufferance was properly rejected.  (*Vide above authorities.*)   III. The ruling of the judge as to the privilege of counsel was correct.  (1 *Phil. Ev.* 140, 141, 142.  1 *Cowen & Hill's Notes,* 275, 276, 277.)   IV. It is not necessary that all the tenants in common should join in an action of ejectment; except when it is a substitute for a writ of right.  (2 *R. S.* 341, § 11.   *Cole* v. *Irvine,* 6 *Hill,* 638. *Vrooman* v. *Weed,* 2 *Barb. Sup. C. Rep.* 330.)   This objection, if it exist, should have been taken advantage of by demurrer. (2 *Wend.* 158.)   V. But here all did join.   VI. The judge properly rejected the evidence as to the ownership, will, &c. of old Solomon Kellogg.   (1.) It was a matter of discretion at

that stage of the cause whether to admit or reject the evidence. *Leland* v. *Bennett*, 5 *Hill*, 286.) (2.) The evidence was in itself incompetent and immaterial. (4 *Cowen*, 599. 9 *Id.* 81, 233. 6 *Hill*, 525. 9 *Wend.* 223. 3 *Paige*, 220.) VII. A plaintiff in ejectment may recover for less than he declares for ; for less land or for a less amount of interest in the land. ( *Vrooman* v. *Weed*, 2 *Barb. Sup. Ct. Rep.* 330, 156, 644. *See also* 25 *Wend.* 434.) VIII. If the evidence of Barker is incompetent to show conveyances by Pearl Kellogg, then the whole title, quoad the defendant, is in Pearl, and he is entitled to judgment on the first count. IX. If the evidence of Barker shows conveyances by Pearl Kellogg, then it shows the title to seven-elevenths and two-thirds of one-eleventh vested in his co-plaintiffs Barker, Mills and Bradner ; and the title to the remainder, viz. two-elevenths and one-third of one-eleventh remains and is in Pearl Kellogg ; and then, according to the stipulation in the case, Pearl is entitled to judgment for two-elevenths and one-third of one-eleventh under the first count, and the other plaintiffs are entitled to judgment for seven-elevenths and two-thirds of one-eleventh under the second count. And thus, judgment is rendered against the defendant for the whole of the premises, and so it should be.

*O. S. Williams*, for the defendants. I. The title proved by the plaintiff was not good, because James Kellogg was in possession, under the contract, and therefore he had no interest which could be sold by execution at law. (1 *R. S*, 736, §§ 4, 6. *Griffin* v. *Spencer*, 6 *Hill*, 525. *Talbot* v. *Chamberlain*, 3 *Paige*, 219.) (1.) The defendant being in possession, and holding a contract for the purchase, raises a strong presumption that his possession was under that contract ; and this possession becomes conclusive when, as in this case, there is no evidence to rebut that presumption. (*Jackson* v. *Croy*, 12 *John.* 427.) (2.) It makes no difference whether the contract contains any clause giving a license to enter : the question is, is the defendant in possession ? If so, is he not a tenant at will under it ? (*Jackson* v. *Johnson*, 5 *Cowen*, 74, 78, 79, 90, 91, 99. *Cooper* v. *Stower*, 9 *John.* 331.) (3.) It matters not whether it appears

Kellogg *v.* Kellogg.

that the possession was commenced under the contract or not : even if it appears that it commenced before the contract, but was continued after and not clearly in opposition to it, it will be regarded as being under the contract. And in the present case there is no proof whatever of any possession before the contract. (*Jackson* v. *Lewis*, 10 *John.* 435. *Jackson* v. *Ayres*, 14 *Id.* 225.) II. The title proved by the plaintiff was not good, because James Kellogg was a tenant at will or sufferance, and therefore he had no interest which could be sold by execution at law. The statute, (1 *R. S. p.* 722,) declares that an estate at will or by sufferance shall not be liable to sale on execution. (4 *Kent's Com.* 110, 116.) (1.) A person who is in possession of premises for which he has a contract of purchase is a tenant at will or by sufferance, though his contract contains no express license to enter. (*See cases cited above; Jackson* v. *Johnson*, 5 *Cowen*, 74, 78, 9, 90, 1, 99 ; *Cooper* v. *Stower*, 9 *John.* 331.) III. The judge erred in excluding the answer as evidence. (1.) It was admissible evidence. The original answer, filed, sometimes called the office copy, would be good evidence ; and the paper served as a copy upon the opposite party is evidence equally good. (*Jackson* v. *Harrow*, 11 *John.* 434. 2 *Cow. Tr.* 925, 6. *Ripley* v. *Burgess*, 2 *Hill*, 360.) (2.) The evidence was relevant : it would show the manner and circumstances of the defendant's possession. IV. The judge erred in holding that C. P. Kirkland was excused from answering because he was counsel for the plaintiff. V. The evidence shows that the plaintiff Pearl Kellogg owned two-elevenths of the whole premises, and the other plaintiffs seven-elevenths and two-thirds of one-eleventh thereof. VI. The pleadings show the same title. Pearl Kellogg having sold to the other plaintiffs some portion of his interest, cannot recover any thing under the first count; for there he claims the whole and only the amount claimed (two-elevenths) under the third count; and the other plaintiffs may recover seven-elevenths and two-thirds of one-eleventh under the second count. (*Borst* v. *Griffin*, 9 *Wend.* 307. *Bear* v. *Snyder*, 11 *Id.* 593. *Harrison* v. *Stevens*, 12 *Id.* 170. *Van Alstine* v. *Spraker*, 13 *Id.* 578. *Holmes* v. *Seeley*, 17 *Id.* 75. *Hin-*

*man* v. *Booth*, 21 *Id.* 267.   *Ryerss* v. *Wheeler*, 22 *Id.* 148; *S. C.* 25 *Id.* 434.   *Gillet* v. *Stanley*, 1 *Hill*, 121.   *Cole* v. *Irvin*, 6 *Id.* 634.   2 *R. S.* 304, §§ 5 *to* 10, 30.   3 *Id.* 707, 2*d ed.*) VII. The plaintiffs owning only two-elevenths, seven-elevenths and two-thirds of one-eleventh, nine-elevenths and two-thirds of one-eleventh, a part of the premises, must belong to some other person, and therefore as only a part of the tenants in common have brought the action, they should be nonsuited, or at least can not recover.   (1 *R. L.* 80, § 2.   *Malcom* v. *Rogers*, 5 *Cowen*, 188. 2 *R. L.* 341, § 11.   *Cole* v. *Irvin*, 6 *Hill*, 634, 638, 9.   2 *R. S.* 232, § 22.   *Gra. Pr.* 830.   1 *Ch. Pl.* 189.   2 *Phil. Ev.* 265. *Adams on Ej.* 186. 4 *Cranch*, 165.   *Jackson* v. *Bradt*, 2 *Caines*, 169.)   VIII. The judge erred in excluding the evidence which the defendant proposed to give when the witness Barker was re-called. (1.) The testimony was offered in season.   The witness had just left the stand, and was still in court; neither party had summed up, nor had the terms of the verdict been agreed upon. (*Gra. Pr.* 290.   *Jackson* v. *Tallmadge*, 4 *Cowen*, 450.   *Legget* v. *Boyd*, 3 *Wend.* 379.)   (2.) The testimony offered was not irrelevant.   IX. If after all it is held that the plaintiff can recover, then the verdict should be for the plaintiff Pearl Kellogg for two-elevenths of the premises; and for the other plaintiffs for seven-elevenths and two-thirds of one-eleventh.

*By the Court*, ALLEN, J.   The plaintiff, Pearl Kellogg, when the evidence was closed on the part of the plaintiffs, was entitled to a verdict for the whole premises, in fee, under the first count in the declaration.   The evidence showed the defendant in possession of the premises at the time of the recovery of a judgment against him, by virtue of an execution issued, upon which the premises were afterwards sold, and a continued possession in him from that time to the time of the commencement of the suit, and that Pearl Kellogg had acquired the title of the defendant under the sale upon that execution.   (*Jackson* v. *Town*, 4 *Cowen*, 599.   *Jackson* v. *Parker*, 9 *Id.* 81.   *Jackson* v. *Graham*, 3 *Caines*, 188.   *Day* v. *Alverson*, 9 *Wend.* 223.) But it is insisted, on the part of the defendant, that the title ac-

quired by Pearl Kellogg, under the judgment and execution, was not valid, because the defendant was in possession under a contract for the purchase thereof from Pearl Kellogg, and that therefore he had no interest which could be sold by execution at law. By statute the interest of a person holding a contract for the purchase of lands is not bound by the docketing of a judgment or decree, and can not be sold by execution thereon. (1 *R. S.* 744, § 4 *to* 6.) In this case the defendants did not acquire any right to the possession of the premises under the contract to purchase. It was a naked contract of purchase, and was silent upon the subject of possession. A right of entry did not follow from such contract. (*Suffern* v. *Townsend*, 9 *John.* 55. *Cooper* v. *Stower, Id.* 331.) There is no evidence of a parol license to the defendant to enter as a purchaser under the contract, and if there was it would not aid the defendant; for such parol license, and the possession in pursuance of it, would be an interest in the land distinct from the interest acquired under the contract, and would be subject to sale by execution. The statute only exempts from such sale the interest acquired by the contract. The chancellor, in *Talbot* v. *Chamberlin*, (3 *Paige*, 219,) says, "I am inclined to think that if the defendant is in possession under and by virtue of the contract to purchase, his possession under that contract, can not be sold on execution at law." "But the provision of the statute can not protect the possession of the defendant in the execution from a sale by the sheriff, unless he holds that possession as a part of his interest acquired under the contract to purchase. In this case it appears that the defendant had no right to the possession of the land under any contract for the purchase thereof. The contract with Talbot gave him no such right, and he can not set up a parol agreement not contained in the written instrument. If such a parol possession was given it was not a part of the contract to purchase, which the statute requires to be in writing." In *Griffin* v. *Spencer*, (6 *Hill*, 525,) the defendant was entitled to the possession under his contract. Bronson, J. says, "Possession is a part of the interest acquired under the contract, and if the defendant has no other right to the property there is nothing

on which a sale at law can operate." We can not presume, in this case, that the defendant entered and acquired the possession under and by virtue of his contract of purchase. The contract itself is in evidence, and gives no such right, and leaves no room for presumptions. In *Jackson* v. *Croy*, (12 *John*. 427,) cited by the defendant's counsel, the court held merely that the repeated applications of the defendant to the plaintiff to purchase the premises before he took possession, afforded strong presumption that he came into possession under the plaintiff. No contract was proved, and the evidence was submitted to the jury with other circumstances, and with a view to rebut the evidence of adverse possession which was relied upon by the defendant, and whether the entry was under the contract or any other license was wholly immaterial. The possession, in either case, was not adverse. And if we presume, in this case, that the defendant entered in pursuance of a parol license then, as we have seen, the possession thus acquired was the subject of a sale on an execution, and the plaintiff Pearl Kellogg acquired it under the sheriff's sale. But whether the defendant entered into possession of the premises with or without the license and permission of the plaintiffs, having taken from one of them a contract for the purchase, and treated him as the owner, he would not be permitted, in an action of ejectment by the vendor, to set up his possession as adverse to the title of his vendor. His possession would be deemed consistent with the title of his vendor, and to this extent, and no further, do the cases cited and relied upon by the defendant's counsel go. (*Jackson* v. *Johnson*, 5 *Cowen*, 74, *Cooper* v. *Stower*, 9 *John*. 331. *Jackson* v. *Sears*, 20 *Id*. 440.) And these decisions are all based upon very familiar principles not at all affecting the questions before us in this case.

It is next insisted, in behalf of the defendant, that the title proved by the plaintiff, under the sheriff's sale, was not good because James Kellogg was a tenant at will or sufferance, and therefore he had no interest which could be sold by execution at law. And to maintain this position it is assumed that the defendant, at the time of the sale on the execution, was in pos-

Kellogg *v.* Kellogg.

session of the premises under his contract for the purchase. But there was no evidence of this. On the contrary, the contract not giving him a right of entry, his possession must be referred to some other right or some other contract, and what that right was, or what were the terms of that other contract, does not appear. If he entered under his contract, his possession would be protected from sale by execution as an interest acquired under and by virtue of his contract, and not as an estate at will. Although for some purposes the entry of a purchaser upon the purchased premises is called an entry as by a tenant at will, yet the estate of the vendee can not be said to be an estate at will or at sufferance. In *Cooper* v. *Stower*, (9 *John.* 331,) the contract, without containing a clause giving the vendee a right of entry upon the premises, did contain a clause from which the defendant insisted that a license to enter was necessarily to be implied, and it was in reference to that part of the contract that the court say, that the most that can be implied is, that the defendants were at liberty to enter as tenants at will, and to occupy the land in a reasonable manner as other tenants at will might do; but whether such license to enter was to be implied in that case was not decided. The action was trespass, for waste, and the court held that even if the vendee had the right to enter, as was contended, he had no greater right to commit waste than a tenant at will would have had; that is, that a license to enter was not a license to commit waste. Doubtless, in many respects, the rights and duties of a vendee in possession under a contract of purchase, are very like those of tenants at will, at sufferance, for years, for life in dower, or by curtesy; but *it by no means follows* that he has the *estate* of either class of such occupants. There is no tenancy; the relation of landlord and tenant does not exist; he is not entitled to notice to quit, and can not be dispossessed by summary proceedings. His possession may be likened to that of a tenant, for many purposes, but his "estate" is *sui generis,* and does not come within the act exempting "*estates*" at will or by sufferance from sale on execution. (1 *R. S.* 722, § 5.) An estate at will is where one man lets land to another to hold at the will of the lessor. (4

Kellogg v. Kellogg.

*Kent's Com.* 110.) A tenant at sufferance is one that comes into possession by lawful title, but holdeth over by wrong. (*Id.* 116.) The defendant has not brought his estate within either definition.

The copy answer of the plaintiff Pearl Kellogg to a bill in chancery, filed against him by the defendant, was rightfully excluded as evidence. As a copy of the answer on file it was to be proved as other transcripts, that is, by a witness who had compared the copy line for line with the original, or who had examined the copy while another person read the original. (1 *Phil. Ev.* 386. *Cowen & Hill's Notes. p.* 1065, *note* 719.) Had the trial been in the same court, and in the same cause, the office copy of the answer served by the solicitor of the plaintiff would have been competent evidence. (1 *Phil. Ev.* 387. *Cowen & Hill's Notes,* 1068. *Roscoe's Cr. Ev.* 187. *Burnand* v. *Nerot,* 1 *Car. & P.* 578.) And probably if the trial had been in another court but in the same cause in which the answer was put in, as upon the trial of a feigned issue in that cause, the answer would have been evidence. (*Highfield* v. *Peake,* 1 *Moody & Malkin,* 109.) And this is the extent of the rule. In *Jackson* v. *Harrow,* (11 *John.* 434,) the copies of affidavits offered in evidence had been served in the same cause, as the foundation of a motion to permit the defendant against whom they were offered, to defend the action in place of his tenant. So in *Ripley* v. *Burgess,* (2 *Hill,* 360,) copies of the pleadings in the cause were used on an interlocutory motion in the same court and in the same cause in which they had been served. But secondly, the evidence was incompetent for the purpose offered; that is, to prove that the defendant was in possession of the premises under his written contract. He could not have been in possession under that, as it did not authorize an entry; and if the entry was in virtue of any other license or contract, the possession was not protected from sale on execution. (3 *Paige,* 220. 6 *Hill,* 525.) Mr. Kirkland, the counsel, was properly excused from producing the deeds in his possession, and which he had received in his character as coun-

sel, and from speaking of their contents. (*Jackson* v. *Dennison*, 4 *Wend.* 558. 1 *Phil. Ev.* 140. *Cowen & Hill's Notes*, 276.)

As the evidence stood at the close of the trial, the plaintiffs were entitled to recover the whole premises, although not pre-cisely in the proportions claimed in the declaration. The only variance was, however, in the claim of Pearl Kellogg, who had in one count claimed the whole of the premises, and in the other three-eleventh parts thereof. The evidence showed him entitled to recover three-elevenths and one-third of one-eleventh. The rights of the other plaintiffs were truly stated. In determining the rights of the parties, we lay out of view the testimony of Barker, that Pearl Kellogg was reputed to own only three-elev-enths of the premises. It was not competent evidence to limit his right. Without reviewing the cases, or examining the stat-ute at length, we think the plaintiffs are entitled to recover ac-cording to the proof, and the declaration may be amended accordingly. Such are the decisions in *Borst* v. *Griffin*, (9 *Wend.* 307;) *Bear* v. *Snyder*, (11 *Id.* 593;) *Harrison* v. *Ste-vens*, (12 *Id.* 170;) *Van Alstyne* v. *Spraker*, (13 *Id.* 578; *Hin-man* v. *Booth*, (21 *Id.* 267;) *Ryerss* v. *Wheeler*, (22 *Id.* 148;) *S. C.* (25 *Id.* 434;) *Truax* v. *Thorn*, (2 *Barb. S. C. Rep.* 156;) *Vrooman* v. *Weed*, (*Id.* 330;) *Van Rensselaer* v. *Jones*, (*Id.* 643.) In *Holmes* v. *Seeley*, (17 *Wend.* 75,) the court say that a better way, upon the trial of an action of ejectment, is to disregard a variance in description of the quantity of interest, and allow a verdict to be taken according to the proof, leaving the plaintiff to apply to amend his declaration. *Gillet* v. *Stanley*, (1 *Hill*, 121,) followed *Holmes* v. *Seeley*, and in *Cole* v. *Irwin*, (6 *Hill*, 634,) the question did not arise and was not decided; and these are all the cases upon the subject. We have no doubt of our right to do what the judge upon the trial might have done—dis-regard the variance—and we have the additional right to au-thorize an amendment of the declaration, which we do.

The view we take of the rights of the plaintiffs, obviates the necessity of passing upon a question made by the defendant upon the assumption that the plaintiffs were entitled to recover only

Kellogg v. Kellogg.

several undivided parts of the premises, and less in the aggregate than the whole, viz, that if two or more tenants in common unite in an action of ejectment, all must unite under the provisions of 2 revised statutes, 341, section 11, which is a re-enactment, in substance, of section two of the act for regulating the process and proceedings in assizes and other actions. (1 *R. L.* 80.) This act was not designed to affect proceedings in the action of ejectment proper, but to obviate a difficulty which existed in real actions and prevented those having a common interest from uniting in a writ of right, (*Jackson* v. *Bradt*, 2 *Caines*, 169,) and does not now apply to actions of ejectment, unless they are brought as substitutes for a writ of right. (*Cole* v. *Irvine*, 6 *Hill*, 634.) But in the action of ejectment, there never in this state was any difficulty in tenants in common uniting in the action; and as their right to unite did not depend upon the statute which received a construction in *Cole* v. *Irvine*, there is no necessity as there is no reason for applying the principle there decided. In *Jackson* v. *Bradt*, there was a recovery of ten-twelfths of the premises, showing that it was not then considered necessary that all the tenants in common should unite in the action, although several had done so. (*See also* 4 *Cranch*, 165.)

It rested in the sound discretion of the judge, at the trial, to admit further evidence after the trial had once closed; and as there was no complaint that the defendant was taken by surprise or had before the time he offered the evidence been unable to procure the attendance of witnesses in court, we can not say that the discretion was improperly exercised. (*Jackson* v. *Tallmadge*, 4 *Cowen*, 450. *Leggett* v. *Boyd*, 3 *Wend.* 379. *Leland* v. *Bennett*, 5 *Hill*, 286, 289. *Cowen & Hill's Notes*, 712, 718.) And there is some doubt whether the evidence offered would have been competent at any stage of the trial. (*Jackson* v. *Town*, 4 *Cowen*, 599. *Jackson* v. *Graham*, 3 *Caines*, 188. *Jackson* v. *Parker*, 9 *Cowen*. 81.) But we rest our decision upon the ground that the admission or rejection of the evidence at the time it was offered, was in the discretion of the

Zeiter *v.* Bowman.

judge upon the trial. The plaintiff, Pearl Kellogg, is entitled to judgment for three-elevenths and one-third of one-eleventh, and the other plaintiffs are entitled to judgment for seven-elevenths and two-thirds of one eleventh of the premises.

Judgment accordingly.

SAME TERM. *Before the same Justices.*