James A. Deering, Plaintiff, v. William Riley and Others, Defendants.

*Ejectment — maintainable by one of several joint tenants or tenants in common — proof of seizin or the right of possession, rather than actual possession within twenty years, is sufficient — description which does not convey to the middle of an abutting road.*

Neither section 118 of the Code of Procedure, nor section 1500 of the Code of Civil Procedure, requires that joint tenants or tenants in common *must* unite in an action of ejectment.

Section 1500, in its strictest construction, which imports only that where two or more persons are joint tenants or tenants in common, an action of ejectment to recover an undivided share cannot be supported unless the action might be maintained by all owning the shares, is fully satisfied when in a given case the proof shows that the plaintiff is entitled to possession as a joint tenant or tenant in common, and that those in whom the title to the other undivided interests rests may, *prima facie,* maintain an action to recover possession of those interests. It is not necessary for the plaintiff to make proof of the names of the individuals who own the other interests or to try their title.

Section 365 of the Code of Civil Procedure, providing that "an action to recover real property, or the possession thereof, cannot be maintained by a party other than the people, unless the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question within twenty years before the commencement of the action," must be read in connection with section 368, declaring that a "person who establishes a legal title to the premises is presumed to have been in possession thereof within the time required by law, and the occupation of the premises by another person is deemed to have been under and in subordination to the legal title, unless the premises have been held and possessed adversely to the legal title for twenty years before the commencement of the action."

Where there is no defense interposed of adverse possession, or possession with claim of title adverse to that set up by the plaintiff, section 368 of the Code of Civil Procedure is to be construed as requiring seizin or the right of possession, rather than actual possession under section 365 within twenty years before the commencement of the action.

A deed of conveyance, describing the property conveyed as "beginning on the northeasterly *corner* of Blackburry alley, on the southeasterly *side* of the Bloomingdale road, and running along said Blackburry alley * * * thence along the line of lot No. ninety-four * * * to Manhattan street; thence along said Manhattan street * * * to the corner of Bloomingdale road and said Manhattan street; thence along the Bloomingdale road * * * to the place of beginning, being lots numbers fifty-three, fifty-five, fifty-seven and fifty-nine on the southeasterly side of Bloomingdale road, as laid out and sur-

veyed on a map of Manhattanville by Adolphus Loss, city surveyor," when read in connection with the map referred to, which shows the lots as situated when Bloomingdale road was used, does not convey the land outside the east side or line of Bloomingdale road or the title to the middle of the road.

Motion by the plaintiff, James A. Deering, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term.

This is an action of ejectment and to recover $600 damages for withholding possession of a portion of land formerly a part of Bloomingdale road, of which the plaintiff claims to be seized of one undivided third part. The complaint described the land as bounded northerly by the south side of Manhattan street, southerly by the north side of One Hundred and Twenty-seventh street, easterly by a line formerly the east side of Bloomingdale road and westerly by a line formerly the west side of Bloomingdale road. The answer is a general denial. A stipulation appears that the described premises, or a part thereof, were occupied by the defendants for at least five years before the commencement of this action, and the surveys admitted and accepted by the defendants show that they were in possession of the eastern half. The proof presented by the plaintiff to establish his title consists principally of various deeds.

It appears that before the Bloomingdale road was in existence, William Molenor had title to the land in dispute and a large amount of land adjoining it, he having derived the same in 1790 from John Titus, who obtained it in 1789 by deed from John Ray, master in chancery. In 1791 the common council of the city of New York contemplated laying out a road; a survey report was made in 1795 showing that the road was to cross the lands of William Molenor, and an inquiry was then had to " assess the damages and recompense " due to the owners for the interest in the lands proposed to be taken, which inquiry awarded William Molenor fifty-two pounds. By deed in 1806 William Molenor and wife conveyed to Jacob Schieffelin, Thomas Buckley and John B. Lawrence land lying " along the said road " and on the east side of it, and by a chain of deeds these same parties acquired in 1806 the title to lands on the other side of the road. There also appears a deed dated February, 1809, from Schieffelin, Buckley and Lawrence to Thomas Brass, which gives

title to land "beginning on the northeasterly *corner* of Blackburry alley on the southeasterly *side* of the Bloomingdale road and running along said Blackburry alley, * * * thence along the line of lot No. ninety-four * * * to Manhattan street; thence along said Manhattan street * * * to the corner of Bloomingdale road and said Manhattan street; thence along the Bloomingdale road * * * to the place of beginning, being lots numbers fifty-three, fifty-five, fifty-seven and fifty-nine on the southeasterly side of Bloomingdale road as laid out and surveyed on a map of Manhattanville by Adolphus Loss, city surveyor." This map is in evidence and shows the lots as situated when Bloomingdale road was used.

By the Laws of 1867 (Chap. 697) the commissioners of Central Park laid out new streets, and in so doing a part of the Bloomingdale road was closed. By deed dated November 29, 1889, George N. Lawrence, executor under the will of John B. Lawrence, deceased, conveyed to the plaintiff the one-third interest of John Lawrence in the land in dispute, namely, the closed portion of the old road. This deed is signed George N. Lane, surviving executor, etc. The will to which the deed refers was probated November 8, 1844.

The plaintiff introduced evidence on the trial showing that he had suffered damages as alleged in his complaint to the extent of $600.

At the conclusion of the evidence, the defendants moved to dismiss the complaint on the ground that the plaintiff claimed only a third interest, and had not joined as parties his co-tenants nor sufficiently set forth the nature of his title and interest; that the cause of action for damages should have been separately pleaded and set forth. In addition it was urged that the plaintiff, by the deeds he introduced, pretends to show more than a one-third interest; that the plaintiff had not shown himself ever to have been in possession under the deeds in evidence, and that the deeds introduced by the plaintiff show that the title is not in the plaintiff or any one under whom he claims, but is in one Thomas Brass. Defendants also moved to strike out the deed to the plaintiff on the ground that the plaintiff himself had no right to purchase real property from anybody unless the grantor from whom he purchases is possessed of the property within one year prior to the commencement of the action.

Upon these motions being granted, the plaintiff excepted, and the

trial judge ordered the exceptions to be heard in the first instance in this court.

*Clarence L. Barber*, for the motion.

*William P. Maloney*, opposed.

O'BRIEN, J.:

Under the old system at common law there was included in the judicial determination of controversies the wager of battle, in which, as in issues joined upon a writ of right, the decision rested upon the result of personal contest. That was the law in this State until it was abolished by statute in 1786. In the more rational methods of procedure which have superseded the ancient forms, there are still oftentimes observable many features that may be likened to the ancient judicial combat. Thus, in the present case, the defendants, who make no claim of title and do not assert possession based on any right, still defend their possession by attempting to parry the thrusts of their adversary, and at the same time most vigorously assail at every possible vulnerable point the different positions taken by their antagonist, who enters the arena endeavoring to drive out an intruder who has unjustly taken possession of his lands. On this record, should the defendants succeed, it would be a signal triumph for "Squatter Sovereignty." Having in mind the respective positions occupied by the combatants, we may proceed to give a more detailed account of the contest, with our decision of the controversy.

The defendants contend that the plaintiff cannot recover for the reason that his pleading does not set forth a proper cause of action in ejectment, nor a cause of action under which he can obtain damages for the withholding of the property, and that, being either a tenant in common or a joint tenant, he cannot possibly recover on his pleading. And section 1500 of the Code of Civil Procedure is cited in support of this contention. That section provides: "Where two or more persons are entitled to the possession of real property as joint tenants or tenants in common, one or more of them may maintain such an action to recover his or their undivided shares in the property in any case where such an action might be maintained by all."

It is urged that under this provision of law it was necessary for

the plaintiff to allege and prove who are the owners of the other two-thirds of the *locus in quo*, the nature of their interests, and facts which would entitle them to unite with the plaintiff in maintaining an action of ejectment. This section does not relate to pleading at all. All that is necessary in declaring in ejectment is a statement of the real names of the parties to the action, a description of the premises sufficiently certain to enable the sheriff to deliver possession, a statement of the interest the plaintiff claimed in the premises, that the plaintiff was in possession or was entitled to possession, that the defendant unlawfully entered and dispossessed the plaintiff or those under whom he claims the premises and withholds the possession, and (since the Revised Statutes) sufficient allegations to show that the plaintiff is entitled to rents and profits or damages. Section 1500 of the Code of Civil Procedure is stated by a compiler of that Code (Throop's ed. 1880) to be new in form, and to have been designed to settle a conflict between *Cole* v. *Irvine* (6 Hill, 634), on the one hand, and *Jackson* v. *Bradt* (2 Caines, 169) and *Kellogg* v. *Kellogg* (6 Barb. 116) on the other, in accordance with the presumed intent of the final clause of the amendment made in 1867 to section 118 of the Code of Procedure, which is, that any person claiming title or a right of possession to real estate may be made a party plaintiff or defendant, as the case may require, in an action to recover tthe possession of real estate. Neither of these Code provisions requires that joint tenants or tenants in common *must* unite in an action of ejectment, and section 1500, in its strictest construction, imports only that where two or more persons are joint tenants or tenants in common, an action of ejectment to recover an undivided share cannot be supported unless the action might be maintained by all owning the shares. Whatever may be the effect of this section in reconciling the conflict of decision mentioned, it has served only to introduce embarrassment and confusion into the action of ejectment. The conflict in the cases referred to has ceased to be a subject of any practical consequence. It arose out of the provision of the Revised Statutes abolishing writs of right, and making the action of ejectment the one great inclusive remedy for the recovery of both the property right and the possession of real estate. When such writs of right were abolished and the action of ejectment became the sole remedy, cases arose in which it became

necessary to consider who might maintain ejectment when it was resorted to as a substitute for the writ of right. That writ was brought after the ordinary *possessory* remedies were lost by lapse of time or otherwise, and in it the right of possession could be established only by showing an absolute right of property. It would not lie to recover any estate less than a fee simple. There was a statute of twenty-five years running against the maintenance of an action for a writ of right. The limitation in ejectment was twenty years, and the question arose as to who might maintain an action of ejectment where it took the place of a writ of right. Now a writ of right could not be sustained by two tenants in common. Each tenant in common had to sue in his own right. (*Cole* v. *Irvine, supra.*) But in the action of ejectment, " there never in this State was any difficulty in tenants in common uniting in the action; and as their right to unite did not depend upon the statute which received a construction in *Cole* v. *Irvine*, there is no necessity, as there is no reason, for applying the principle there decided." (*Kellogg* v. *Kellogg*, 6 Barb. 132.) In *Jackson* v. *Bradt* (*supra*), which was decided in 1804, KENT, J., said that it had become immaterial whether tenants in common declared on joint or separate demises. Section 1500 seems to have been devised to reconcile a supposed conflict of authority, which, if it ever existed, is absolutely unimportant at the present day. Tenants in common and joint tenants could unite in ejectment, and one tenant in common could recover his property right in that action; and this section should not be construed as imposing upon him additional burdens in enforcing his right. Its requirement is fully satisfied when in a given case the proof shows that the plaintiff is entitled to possession as a joint tenant or as a tenant in common, and that those in whom the title to the other undivided interests rests may *prima facie* maintain an action to recover possession of those interests.

The situation of the record here discloses that when the Bloomingdale road was closed in 1867, the fee of the bed of the road was in Lawrence, Schieffelin and Buckley, as tenants in common, or their heirs at law, grantees or devisees. Lawrence's interest passed to the plaintiff, who commenced his action in 1891. On the record, those who may claim under Buckley and Schieffelin may enforce

their rights, and it is entirely immaterial how those rights were derived, it being shown that the conveyance from Buckley, Lawrence and Schieffelin, in 1809, to Brass did not include the roadway in Bloomingdale road. We do not think it was necessary for the plaintiff to make proof of the names of the individuals who now own the two-thirds interests, or to try their title. It was enough for him to prove that he claimed his third and has title thereto, and that the other two-thirds were in unnamed persons who take either as heirs at law or as devisees or grantees of Buckley and Schieffelin; or, in other words, it was not the purpose of section 1500 to throw upon a plaintiff, suing in his individual right to an undivided interest in land, the duty of showing more than the source of his title and that there were others in whom the remaining interest vested, whether such others were named or unnamed.

It is further objected by the respondent that the action cannot be maintained because of the provision of section 365 of the Code of Civil Procedure, which is as follows: "An action to recover real property, or the possession thereof, cannot be maintained by a party, other than the people, unless the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question within twenty years before the commencement of the action."

This section must be read in connection with section 368. Section 365 only enacts that there must have been seizin or possession within twenty years; but section 368 prescribes what shall be evidence of possession, and it declares that the person who establishes the legal title to the premises is presumed to have been possessed thereof within the time required by law, which is merely saying that, for the purposes of the limitation of time in enforcing a remedy in actions for the recovery of real property, while seizin or possession within twenty years is required, at the same time it will be presumed in favor of the person who establishes the legal title on the trial — of course, unless it is shown that the premises had been held and possessed adversely to the legal title for twenty years before the commencement of the action.

The defendants' argument, that the right of possession has lapsed, since there has been no recent actual possession, must, therefore, fail. In so arguing the defendants state that, as it appears that the property was in possession of the public holding an easement from 1795

to 1867, the original owners retained at most but a possibility of reverter for a re-entry to establish title, and there is no evidence that since 1867 the heirs of Schieffelin, Buckley and Lawrence, or those receiving as the plaintiff, have made any entry. Undoubtedly the law well establishes the principle that title itself is extinguished by twenty years of adverse possession after the right of re-entry has accrued. Here, however, there is no claim that there was adverse possession, or possession with claim of title adverse to that set up by the plaintiff, and the defendants rely merely on the section 365 referred to, asserting that *actual* possession is meant. We must hold that *seizin* or the right of possession is the proper construction, and, as shown by section 368, and as held in *Arents* v. *Long Island Railroad Co.* (156 N. Y. 1): " In an action to recover real property the person who establishes legal title to the premises is *presumed* to have been in possession thereof within the time required by law, and the occupation of the premises by another person is deemed to have been under and in subordination to the legal title, unless the premises have been held and possessed adversely to the legal title for twenty years before the commencement of the action." Or, as stated in *Bedell* v. *Shaw* (59 N. Y. 51), mere possession, " however long it has been continued, of itself forms no defense to the action of the plaintiff," and the quality and extent of the right acquired by possession of lands depends upon the claim accompanying it. Section 365 of the Code, therefore, is no bar to the plaintiff's recovery.

The defendants further contend, however, that Molenor gave to the city the fee to the property taken for the Bloomingdale road, and that when the road was closed in 1867 the fee passed to abutting owners, the title to the property in dispute being given, therefore, to Thomas Brass. They also claim that if the city did not acquire the fee, there was then created an estate upon condition subsequent, requiring re-entry, Molenor thus retaining only a possibility of reverter which was not assignable or devisable. These arguments are met by the fact that it is admitted in the record that the city acquired merely a right of way ; and, although the defendants assert that this admission was inserted without their knowledge, we find under the circumstances that the proper principle of law to be applied is that on the city's abandonment the property came to be

possessed by the original owner, his heirs, or those who take from him. Whether it is subject to any burdens or easements is not before us, and is not a matter with which the defendants have any concern. In 1867, therefore, we find that the fee of the land would be in the original owners or those claiming by deed from them, and that no actual possession or entry was necessary to establish title.

We are thus brought to a consideration of the deeds given since Molenor owned the land, in order to determine the plaintiff's title. The contention that the deed to Thomas Brass would give the fee to the middle of the road did such fee remain in the grantors, fails for the reason that the deed specifically designates the boundary of the lots conveyed, and, according to the principles abundantly established of the strict construction of deeds, the land outside the eastern side or line of Bloomingdale road would be excluded. A similar case appears to be *Holloway* v. *Southmayd* (139 N. Y. 390, 413), where it is said: " We are inclined to the view that the descriptive monuments or starting points for the boundary lines cannot be fixed in the center of the Bloomingdale Road without straining too much the language used. In Shaw's deed ' the corner of Constable's land on the north side of the Bloomingdale Road ' seems to indicate the *side* of the road. * * * So * * * ' the corner of the field at the junction of the Bloomingdale Road,' etc., are words which, when read according to their natural import, seem to describe the *situs* of the field and fix the starting point for the boundary line in the exterior line or side of the road bounding the field and not within the road itself."

In *Jackson* v. *Hathaway* (15 Johns. 447), where the description reads: " ' A certain tract of land beginning at a certain stake by the side of the road called the old *Claverack* road, &c., from which stake running east 20° south, 2 chains, to another stake; thence south, 22° west, 17 chains 64 links, and thence ' by specified courses and distances ' to the first mentioned bounds, making twelve acres, 2 roods and 10 perches of land,' " it was held that the road was excluded. In *English* v. *Brennan* (60 N. Y. 609) the description was: " Beginning at the southwesterly corner of Flushing and Clermont Avenues, running thence westerly along Flushing Avenue twenty-five feet; thence southerly at right angles to Flushing Avenue seventy-nine feet, nine inches, more or less, to a point distant forty feet seven and a half

inches westerly from the westerly side of Clermont Avenue; thence easterly and on a line at right angles to Clermont Avenue forty feet, seven and a half inches to Clermont Avenue, and thence northerly along Clermont Avenue to the place of beginning," and it was held that Clermont avenue was excluded. In *Kings County Fire Ins. Co.* v. *Stevens* (87 N. Y. 287) the property was bounded as " Beginning at a point on the southerly side of the Wallabout Bridge Road, adjoining the land now or lately belonging to  *  *  *  north forty-eight degrees, nine minutes, west five hundred and ninety-four feet to the Wallabout Bridge Road; thence north seventy-six degrees, forty-three minutes west along said road one thousand two hundred and twenty feet to the place of beginning;" and the court held, citing many authorities, that as the starting point was on the side of the road, the road was excluded and the land was bounded by the southerly side of the highway.

Reading the words of the deed to Thomas Brass, we must conclude that he did not receive title to the middle of the road; and that, therefore, his grantors, Schieffelin, Buckley and Lawrence, or their heirs, had title to the land in dispute, and, no adverse possession being proved, still had title when the plaintiff's deed was given.

Minor objections are raised against the plaintiff's title, all of which are untenable and only some of which it will be necessary to examine. Thus, it is urged that the deed from George N. Lawrence does not purport to be executed by him as executor; or, if it did, that the deed would convey no interest because the power given the executors under the will of John B. Lawrence is presumed to have been long since extinguished. These objections were not urged upon the trial as ground for dismissal of the complaint; and had they been so presented, they might have been met by additional proof.

The defendants finally urge that the allegation as to damages in the complaint should have been pleaded as a separate cause of action and with more fullness. If the defendants could raise this question other than by demurrer, it is now clear, whatever may have been the former rule, that under the Code of Civil Procedure (§ 1496), and as set forth in *Clason* v. *Baldwin* (129 N. Y. 183), damages for the withholding of property are recoverable in an action of ejectment. As stated in the case referred to, " the commencement

of the action with the demand in the complaint for damages for the withholding of the possession was sufficient to apprise the defendant to prepare to meet the plaintiff's proofs as to all the damages which the withholding comprehended in fact."

Our conclusion, therefore, is that the plaintiff's exceptions should be sustained, and the motion for a new trial granted, with costs to plaintiff to abide the event.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and McLAUGHLIN, JJ., concurred.

Exceptions sustained, motion for new trial granted, with costs to plaintiff to abide event.