## LYFORD *v.* PUTNAM.

Trespass will lie against one, who, having entered upon land under a contract to purchase it, neglects to perform his part of the contract, and cuts and carries away, and converts to his own use, timber therefrom.

An agreement to purchase and convey, does not of itself amount to a license to enter upon land.

Where, by the terms of the contract, the purchaser was prohibited from cutting timber, except to deliver in fulfillment of the contract of sale, the license implied thereby, that he might cut and deliver timber in fulfillment of such contract, is to be construed strictly, and any abuse of it makes the party a trespasser *ob initio.*

The most that can be implied from such a contract is a permission to the purchaser to enter as tenant at will, and occupy the land in a reasonable manner, with authority to cut and deliver sufficient timber to enable him to perform his contract for payment, but not to commit any acts hostile to the interests of the vendor, or amounting to waste.

TRESPASS. The plaintiff's writ is dated October 30, 1856. The first count is *quare clausum*, for breaking and entering the plaintiff's close, in Piermont, in said county, and cutting and carrying away three hundred hemlock trees, and one hundred spruce trees, two hundred maple, beech, birch and other trees, and cutting and carrying away twenty tons of the plaintiff's hay, cutting up, treading down and destroying the grass, &c., between the first day of December, 1853, and the first day of May, 1856.

The second count is for taking and carrying away from the possession of the plaintiff three hundred hemlock trees, and two hundred other trees, property of the plaintiff, and converting them to his own use, at said Piermont, between the first day of December, 1853, and the first day of June, 1855; and the defendant relies on the following facts as an answer to the plaintiff's charge, to wit: On the 24th of April, A. D. 1854, the plaintiff gave to one William Hardy an obligation, of which the following is the condition as far as is relevant to this case, that is: "The condition of this obligation is such, that whereas the said Lyford hath bargained and sold to said Hardy the farm whereon he has lived the past winter, situate in said Piermont, containing one

hundred acres, more or less, and lying on the north-westerly side of the road leading from the house of G. W. Ingalls to Piermont, and commonly called the Sally Moulton farm, for which farm the said Hardy is to deliver to said Lyford, at the railroad depot in Warren, ninety thousand feet of spruce timber in the round log, one half of which quantity is to be delivered by the first day of October next, and the other half to be delivered by the first day of May, A. D. 1855, and when the first half is delivered the said Lyford is to make and deliver to said Hardy a conveyance of said premises, free from all incumbrances; is to take back a mortgage of said premises, to secure the payment of the last half of said lumber, and he is not to cut or sell any spruce timber from said farm without the consent of the said Lyford, excepting what is delivered at said depot, until the said farm is fully paid for."

After the said obligation was signed, it was verbally agreed by the parties that there should be no cutting upon said farm except to further the fulfillment of said contract. The said Hardy did not pay or deliver any part of the lumber mentioned in said obligation, after its date, excepting a small amount, indorsed on his note to the plaintiff at the day of the date of said obligation, nor has he ever since that date paid any portion of the sum stipulated for said farm; that in the winter following the date of said obligation, said defendant, with the aid and consent of said Hardy, cut and carried away from said farm about thirty thousand feet of hemlock timber, and in the winter following (1855) said defendant took and carried away forty-five thousand feet of hemlock, spruce and other trees from said farm; and in the winter and spring of the year 1854, and prior to the date of said obligation, the defendant sold, with the consent of said Hardy, about five thousand feet of spruce timber, which the said Hardy had cut on said farm and drawn to Warren depot for said Lyford, and that in all these operations the defendant had aided the said Hardy with men and teams, and took the amount of all the sales of said lumber, and kept and fed his teams from the hay cut upon said farm. That in the former part of June, 1856, the said Ly-

ford tendered to said Hardy the notes given for said lumber, and demanded his obligation, which notes the said Hardy declined to take, and refused to give up the obligation.

For the purposes of this case, and to have the questions of law arising in the same settled, and for no other purpose, the parties agreed to the foregoing facts ; and that if the said Hardy was authorized by the condition of said obligation to cut and carry away the trees, as aforesaid, mentioned in the plaintiff's declaration, or by virtue of being in possession of said premises in manner aforesaid, there shall be judgment for the defendant; but if from the foregoing facts the plaintiff is entitled to maintain his said action, the case shall be transferred, in order that the amount of damages be found by a jury, or any other fact that the parties may elect to try. And it was further agreed that the defendant have leave to plead, and to file confession of judgment.

*Lyford*, for the plaintiff.

*Felton*, for the defendant.

FOWLER, J. The case finds that in the winter and spring of 1854, and prior to the date of the obligation from the plaintiff to Hardy, the defendant sold, with the consent of Hardy, about five thousand feet of spruce timber, which Hardy had cut on the farm in controversy, and drawn to the Warren depot for the plaintiff, and that the defendant took the proceeds of the sale of said timber and appropriated the same to his own use. It does not find that either Hardy or the defendant had or claimed any license or authority, express or implied, for this selling and appropriating the timber cut from the farm and hauled to the depot for the plaintiff; and, taking for granted, what seems to be assumed in the agreement on both sides, that the plaintiff was the owner both of the farm and of the timber after it was cut therefrom, no reason has been suggested, and none occurs to us, why trespass for taking and carrying away and converting to his own use that timber, may not well be maintained against the defendant under

the second count of the plaintiff's declaration. It would seem to be a clear instance of the wrongful and unauthorized conversion by the defendant of the personal property of the plaintiff.

Nor do we find in the circumstances set forth in the case any sufficient objection, upon the authorities, to the maintenance of trespass *quare clausum* under the first count, for the timber cut and sold from the farm after the execution of the plaintiff's obligation to Hardy. Although the condition of that obligation recites that the farm had been bargained and sold to Hardy by the plaintiff, yet those words must be construed with reference to the whole condition; and the subsequent portion thereof clearly indicates that a regular conveyance was contemplated as the consummation of a contract, which, until such conveyance was executed, was only inchoate. Hardy, therefore, entered simply under an agreement to purchase the farm, with an implied license, resulting by law from such agreement, that he might in the mean time cut from the premises the quantity of spruce timber necessary to make the first payments under his contract with the plaintiff. The agreement to purchase and convey did not of itself amount to a license to enter, but, taken in connection with the stipulation contained in it, that payment was to be made in spruce timber taken from the land, we think the law would fairly imply from it both a license to enter and to cut from the farm the spruce timber necessary for that purpose. But such an implied license is to be construed strictly, and any abuse of it, on well established general principles, makes the party guilty of such abuse a trespasser *ab initio*, so that, were this suit against Hardy himself, he could not justify the cutting of any thing except the quantity of spruce timber necessary to enable him to comply with the terms of his contract. The license implied by law for him to enter and hold possession for a justifiable purpose, must be expressly limited to that purpose. One who enters on land under a contract to purchase, acquires thereby no right to cut and consume the timber. An implied license to enter under such a contract, by no means implies a license to commit waste. On the contrary, one who enters generally under such a contract, has at

most only the rights of a tenant at will; and if he neglect to perform his contract, and, without license for that purpose, cut timber, he is guilty of trespass. *Jackson* v. *Clark*, 3 Johns. 424; *Jackson* v. *Moncrief*, 5 Wend. 29; *Suffern* v. *Townsend*, 9 Johns. 36; *Wendell* v. *Johnson*, 8 N. H. 220; *Clough* v. *Horsford*, 6 N. H. 231; *Bancroft et al.* v. *Wardell*, 13 Johns. 489; *Smith* v. *Stewart*, 6 Johns. 46; *Jackson* v. *Walker*, 7 Cowen 637; *Featherstonhaugh* v. *Bradshaw*, 1 Wend. 135; *Jackson* v. *Camp*, 1 Cowen 610; *Cooper* v. *Stower*, 9 Johns. 331.

The provision that Hardy was not to cut or sell any spruce timber from the farm without the consent of the plaintiff, excepting what was delivered at the depot in fulfillment of the contract of purchase, until the farm was fully paid for, by fair legal construction meant precisely what the parties verbally agreed to after the execution of the obligation; namely, that there should be no cutting upon the farm, under the implied license to enter, except in furtherance of the fulfillment of the contract of sale. The supposition that a contract to purchase, with an implied license to enter and cut timber for the purpose of making payment of the purchase money, authorized the party entering to cut and sell off the timber generally at his pleasure, would authorize a party, who had contracted to purchase a lot with valuable buildings thereon, under the implied license to occupy and improve the premises in the mean time, to enter and pull down and dispose of the buildings, before making payment under his contract. *Cooper* v. *Stower*, 9 Johns. 332; *Erwin* v. *Olmstead*, 7 Cowen 229.

The most that can be implied, under the provisions of the obligation in this case, is a permission to the purchaser to enter in the mean time as tenant at will, and occupy the land in a reasonable manner, as a tenant at will might lawfully do, with an implied authority to cut and haul to the depot therefrom a sufficient quantity of spruce timber to fulfil the stipulations of the contract of purchase, but not to commit any act hostile to the interests of the vendor, or amounting to waste. *Cooper* v. *Stower*, *ubi supra;*

*Jackson* v. *Miller*, 7 Cowen 747, where the authorities are collected and considered.

The contract shows, by withholding the conveyance until one half the purchase money should be paid, and stipulating for a mortgage of the premises to secure the payment of the residue, that the plaintiff relied on the premises contracted to be conveyed as security for the purchase money; and it would be most unreasonable to hold, that, from such a contract, any license was to be implied for Hardy, or the defendant under him, to strip the premises of their timber, and thereby render them comparatively, if not altogether, worthless.

Hardy, then, having neglected to make any portion of his payments under the contract, and having also, as the case finds, through the defendant, cut and sold timber from the farm, without authority or license, express or implied, so to do, but in violation of any rights he acquired by implication of law under the contract of sale, this action may well be maintained in both its counts. Whether, when in the former part of June, 1856, the plaintiff tendered to Hardy the notes given for the purchase money, and demanded the surrender of the contract of sale, the contract was at an end and the rights of Hardy under it terminated, it is not now necessary to consider. It is difficult to perceive why the neglect of Hardy to fulfill his portion of the contract, coupled with the commission of waste by cutting and selling off the timber, should not be regarded as tantamount to a refusal to perform on his part. But the view we have taken, which seems to be fully sustained by the New-York authorities, renders any discussion of these questions unnecessary.

As we are of opinion, that, upon the facts transferred to us, this action may be maintained; according to the agreement of the parties, the case must be discharged, and the action stand for trial at the trial term of this court.