### In re OPENING OF CATHEDRAL PARKWAY.

### In re CAREY et al.

(Supreme Court, Appellate Division, First Department. August 4, 1897.)

1. DEEDS—CONSTRUCTION—PROPERTY CONVEYED.

The owner of four lots and of the fee of the B. road, running north and south through them, so as to leave lots 1 and 3 on the west side, and 2 and 4 on the east side, of the road, made a deed of "those two certain lots * * * distinguished, on a map or chart of four tracts of land on both sides of B. road, * * * by lots number 1 and 2." Lot No. 1 was described as "beginning at the northwest corner of lot No. 3"; thence north, and thence east, by various metes and bounds, "to the road or highway"; thence, "along the road," to lot No. 3; thence to place of beginning. *Held* to convey the fee of the westerly half of the B. road, adjoining lot No. 1.

2. SAME.

Lot No. 2 was described as beginning at the northwest corner of lot No. 4, "opposite the southeast corner of lot No. 1, on the east side of B. road"; thence north, "along the road," to, etc.; thence east; thence south; and thence west, by various metes and bounds, "to the road and place of beginning." *Held* to convey the fee of the easterly half of the B. road, adjoining lot No. 2.

Appeal from judgment on report of referee.

Proceeding by the mayor, aldermen, and commonalty of the city of New York to acquire title to land necessary for Cathedral Parkway. From an order confirming the report of a referee, making distribution of an award to unknown owners for land taken, Henry T. Carey, as trustee under the will of George De Peyster, deceased, and others, appeal. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

Bache McE. Whitlock, for appellants.

James A. Deering, for respondents.

INGRAHAM, J. This proceeding was instituted to acquire the title to certain land necessary for the Cathedral Parkway, in the city of New York, pursuant to chapter 275 of the Laws of 1891. The commissioners in that proceeding made an award for lots numbered 130, 131, and 134 upon the damage map annexed to the report to unknown owners, and this proceeding was instituted to obtain such award. The court below directed the payment to the petitioners of the whole amount awarded for lot No. 134, and one-half of the amount awarded for lots Nos. 130 and 131. Both the petitioners and the contestants appeal from such order. The property included within the bounds of the said lots had been used for many years as a part of Bloomingdale road, which highway had been discontinued in pursuance of chapter 697 of the Laws of 1887. That act provided that all streets, avenues, roads, public squares, and places within the district mentioned in the first section of the act, and which should not be shown or retained on the maps to be filed by the commissioners as thereinbefore required, should, from and after the time of the filing of the said maps, cease to be or remain public streets, avenues, roads, squares, or places; "and the abutting owners on such of the said

streets, avenues, and roads as have been opened or ceded, and as shall be abandoned or closed under the provisions of this act, shall become and be seised in fee simple absolute therein, to the center line thereof, in front of his or their lands, respectively." The contestants in this proceeding are the owners of the land abutting on that part of the Bloomingdale road which included the lots mentioned; and in them vested, by virtue of this act, all the interests of the people of the state, or what was owned by the city of New York, as trustee for the people of the state or for public use, in and to the land in question; and, at the time of the institution of such proceedings, such land was in the actual possession of the contestants.

The first question involved in this case is as to the ownership of the fee of this land. The title of both parties is derived from Nicholas De Peyster, who, it is conceded, owned the fee of this road, and who conveyed the land on both sides of the road to one Mumford, by a deed dated November 2, 1801, which was recorded August 29, 1804; the petitioners claiming as his devisees, and the contestants claiming as grantees of Mumford, and insisting that the fee of the road passed to Mumford by De Peyster's deed before mentioned. The only question involved is as to the right to these awards. It must be assumed that the amount awarded is the value of the property itself, as taken by the city for the use mentioned, and that the award must have been made for the interests of the owners of that property, the sole question before the court being to determine who the unknown owner of this land was; and, when he is ascertained, he is entitled to the money, as if he had been known, and the award had been made to him personally. In re Department of Public Parks, 73 N. Y. 565.

Nicholas De Peyster, prior to the execution of this deed, was the owner of a large tract of land, amounting to upward of 137 acres, through which ran the Bloomingdale road. He caused a map of this plot to be made, on which the land in question was divided into four lots, the easterly boundary line of lot No. 1 and the westerly line of lot No. 2 being the Bloomingdale road; and the land in question was a portion of this road between these two lots. By the deed of November 2, 1801, before mentioned, Nicholas De Peyster and wife conveyed lots Nos. 1 and 2 upon said map to Mumford. The description of lot No. 1, on the west side of Bloomingdale road, is as follows: Beginning at the northwest corner of lot No. 3; thence north, on the North river, by various metes and bounds, to the northerly boundary of the lot; "thence south, sixty-one degrees east, six chains and sixty links, along land of the said Nicholas De Peyster, to the road or highway,"—being the Bloomingdale road, aforesaid; "thence south, nine degrees west, eight chains and four links, along the road, to lot number three"; thence north to the river and place of beginning,—containing 5 acres and $^{42}/_{100}$ of an acre. The description of lot No. 2 is as follows: "Beginning at the northwest corner of lot number four, opposite the southeast corner of lot number one on the east side of Bloomingdale road, and running thence north, nine degrees east, seven chains and eleven links, along the road aforesaid, to the land of James De Peyster; thence south, eighty-one degrees east, along the said land and land of James De Peyster, eighteen chains and twenty-

two links; thence south, sixteen degrees west, along land of the said James De Peyster, nine chains and thirty links, to the northeast corner of lot number four; thence north, seventy-six degrees west, sixteen chains and sixty-seven links, along lot number four, to the road and place of beginning,—containing fourteen acres and eleven-hundredths of an acre." The referee held that De Peyster did not by this deed part with the fee of the land in the road adjoining the tracts therein described, and the correctness of this decision is challenged by the contestants.

It is clear that if the learned referee erred in his construction of these deeds, so that the fee of Bloomingdale road, upon which the lots abutted, was conveyed to the grantee, the contestants are entitled to the whole of this award. In making the damage map annexed to the commissioners' report, the strip of land embraced in Bloomingdale road is divided in the center, and lots Nos. 131 and 134 appear to be included in the westerly half of Bloomingdale road. Lot No. 130 is included in the easterly half of Bloomingdale road. These two lots are separately described, and the deed of De Peyster to Mumford conveys "those two certain lots, pieces, or parcels of land situate, lying, and being at Bloomingdale, in the Seventh ward of the city of New York, and distinguished on a map or chart of four tracts of land on both sides of Bloomingdale road, lately made by Evert Bancker, Junior, by lots number one and two." Lot No. 1 commences on the northwest corner of lot No. 3, being thus the southwest corner of the lot conveyed. That lot is bounded on the west by the Hudson river, and it commences therefore at the Hudson river, on the boundary line between lots Nos. 1 and 3. It runs thence along the river north, to the northerly side of lot No. 1; thence south, along the northerly side of lot No. 1, to the road or highway, being the Bloomingdale road in question; thence, along the road, to lot No. 3; and thence north, to the river, the place of beginning.

Now, it is entirely clear that, if this description stood alone, it would include the fee of the westerly half of the road adjoining these premises. I know of no case that questions the proposition that when land is described as running to a road, and thence along the road, the boundary of the land conveyed is the center of the road, the fee of the road being vested in the grantor. This rule has been recognized from a very early time in England down to the present time. Wagner v. Railroad Co., 25 N. Y. 529; In re Ladue, 118 N. Y. 219, 28 N. E. 465.

And in Holloway v. Southmayd, 130 N. Y. 400, 34 N. E. 1047, Judge Gray, in delivering the opinion of the court, says:

"There is no doubt about the rule being settled that there is a legal presumption against the grantor's intending to reserve to himself the title to the soil of the highway, and that such presumption is only overcome by language in the conveyance clearly indicating such an intention on his part."

In Bank v. Nichols, 64 N. Y. 71, Judge Allen, in delivering the opinion of the court, says:

"Although the highway is in one sense a monument, it is regarded as a line, and the center of the highway in such case is regarded as the true boundary indicated, as is the case when a tree, stone, or other similar object is designated as a

monument. The center, in the absence of any other indication, is regarded as giving the true boundary or limit of the grant."

We have in this description the Bloomingdale road as the boundary of lot No. 1. The lot conveyed runs to the road or highway. No monument except the road is mentioned as the easterly boundary of the lot. The lot is not bounded by the side of the road, nor are any terms used which would indicate an intention of the grantor to limit the land conveyed to the side or edge of the road, as appears in each of the cases cited in which the bed of the road has been excluded. In all such cases the fee of the bed of the road has been held not to pass, because, by express language used in the grant, the intention to exclude the highway was apparent; and, in each of the cases cited, the general rule is recognized. Thus, in Jackson v. Hathaway, 15 Johns. 454, the court say: "Where a farm is bounded along a highway, or upon a highway, or running to a highway, there is reason to intend that the parties meant the middle of the highway." Thus, by this description of lot No. 1, the fee of the westerly half of the roadway vested in the grantee.

We think, also, that the conveyance of lot No. 2 carries the fee of the east half of the roadway. That lot is described as "beginning at the northwest corner of lot number four, opposite the southeast corner of lot number one on the east side of Bloomingdale road." The evidence here is clear that the grantor owned the fee of the Bloomingdale road abutting on lots Nos. 1, 2, 3, and 4. He had, by the deed, conveyed to the grantee the westerly half of the Bloomingdale road, abutting upon lot No. 1. The northwest corner of lot No. 4, confining the description of the lot to a mere reference to the map, would include the fee of the easterly half of the Bloomingdale road, upon which that lot abutted, as we have here proof of the fact, the absence of which Judge Gray commented upon in the case of Holloway v. Southmayd, supra, that the grantor did own to the center of the road. If we accept, therefore, the northwest boundary of lot No. 4 as the point from which the description of this lot runs, that point would be in this case fixed as the center of the road. The lot conveyed is also described as being "opposite the southeast corner of lot number one on the east side of Bloomingdale road." If these words "on the east side of Bloomingdale road" should be construed to apply to lot No. 1, as the punctuation would seem to indicate, there was an evident mistake, because lot No. 1 is not on the east side, but on the west side of the road. Taking the whole description together, it would appear that the words "on the east side of the Bloomingdale road" were intended to convey a general description of lot No. 4, rather than of lot No. 1 or No. 2, to indicate that lot as being a lot on the east side of the road. By transposing those words, so that the description would read, "Beginning at the northwest corner of lot No. 4, on the east side of Bloomingdale road, and opposite the southeast corner of lot No. 1, and running thence along the road," it would seem to be the description that was intended. This would manifestly refer, not to the northeast corner, which was on the east side of the road, but to the lot itself, as being so situated. The lot thence ran along the road, not along the side of the road,—a description which

would clearly indicate an intention to convey to the center of the road, rather than to limit the grant to the easterly side; and then, being carried by various metes and bounds to the northeast corner of lot No. 4, the description runs thence along lot No. 4, to the road and place of beginning, again making the road the boundary of the lot rather than the side of the road.

We must also consider the fact that by this deed the grantor conveyed the land upon both sides of this road. There is nothing to show any intention or necessity of reserving the fee of the roadway. He had parted with the land upon both sides of the road by one deed, and the west half of the road went without there being any language in the deed to indicate an intention to retain any interest in the east half of the road abutting on the property granted, and without expressly bounding either plot by the side of the road, but in both cases using the road itself as the actual boundary of each separate plot. The reference in the deed to the plan or map of the lots does not indicate an intention to exclude the bed of the road. The rule is well settled that:

"It is not sufficient to exclude from the operation of the grant the soil of a highway, usque ad medium filum, that the grant is made with reference to a plan annexed, the measuring or coloring of which would exclude it, or by lines and measurements which would only bring the premises to the exterior line of the highway, or that they are bounded generally by the line of the highway, or along the highway, or by any similar expressions." Bank v. Nichols, supra.

We have therefore come to the conclusion that, by this conveyance, the fee of the Bloomingdale road, upon which lots Nos. 1 and 2 abut, was conveyed to the grantee, was vested in the claimants, and that the petitioner is not entitled to any portion of this award to unknown owners. The order appealed from should be modified by directing that the award should be paid to the claimants.

The order entered contains a provision that the payment of this award shall be made either to the parties entitled to it, or to their attorneys. We think, in such a proceeding as this, where the money, which stands in the place of land taken for a public use, is in the hands of the chamberlain, that such a provision in the order is improper. To authorize its payment by the chamberlain to any person other than to the owner of the fee of the land taken, we think there should be a power of attorney, acknowledged as is required, to entitle a conveyance of real property to be recorded, so that there should be a public record of the receipt of the money, which would be proof that all of the steps necessary to vest the public with the property taken had been completed.

The order, as modified as herein directed, is affirmed, without costs. All concur.