(35 App. Div. 582.)

### CARROLL v. McKAHARY et al.

(Supreme Court, Appellate Division, First Department.   December 30, 1898.)

MORTGAGES—FORECLOSURE—PARTIES—MARKETABLE TITLE.

Notice to a mortgagee that some judgment creditors of the mortgagor, whose judgments were subsequent to a conveyance to the mortgagor's wife, had sued to set aside the conveyance for fraud, does not, even if the conveyance, as to them, was adjudged void, require the mortgagee to assume that all other subsequent judgment creditors have and will assert the same equity, and for that reason to make them parties defendant to a foreclosure suit, in order to make the purchaser's title marketable.

Appeal from special term, New York county.

Suit by Daniel J. Carroll against Alice McKahary and others. From an order relieving William J. Brown from a purchase at foreclosure sale, plaintiff appealed.   Reversed.

Upon the 12th of March, 1897, Edward McKahary conveyed the property in question to Alice, his wife.   The deed recites the consideration of one dollar and other good and valuable consideration.   Upon the 15th of November, 1897, Alice executed the mortgage which was foreclosed by the plaintiff, who paid her the full amount thereof, $2,000.   Between the 12th of March and the 15th of November, judgments were docketed against Edward.   The plaintiffs in three of these judgments subsequently commenced creditors' actions to set aside Edward's deed to Alice.   The plaintiff herein made these three judgment creditors parties defendant in his foreclosure action, but he did not make those other judgment creditors, who had not commenced such suits, parties.   For that reason the purchaser objected to the title, and the objection was sustained below.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

James F. Higgins, for appellant.
William H. Stockwell, for respondent.

BARRETT, J.   The judgments docketed against Edward McKahary after he conveyed the property in question to his wife, Alice, were not liens of record upon the land.   The conveyance was good inter partes, and the fee consequently vested in Alice.   If, however, the conveyance from Edward to Alice was made with intent to hinder, delay, or defraud the plaintiffs in these judgments, the latter, at their option, could claim a lien in avoidance of the record title.   As to them the deed was voidable.   The question is, should the plaintiff (Alice's mortgagee), in foreclosing his mortgage, have made these judgment creditors of Edward parties defendant?   It is clear that, so far as the record spoke, they were not necessary parties.   They had apparently no lien upon or interest in the premises.   It is said, however, that they may at any time assert such lien; that, in fact, if the deed from Edward to Alice was made with intent to hinder, delay, or defraud them, they actually had such a lien when the foreclosure suit was commenced (Smith v. Reid, 134 N. Y. 577, 31 N. E. 1082); and, consequently, that they have not been cut off.   The postulate here is a bare possibility.   It did not suffice to make them necessary parties.   The plaintiff in foreclosing his mortgage was not bound to go behind the record, or to inquire as to the existence of judgments against his mortgagor's grantor docketed after the latter was devested of title.

55 N.Y.S.—8

Nor was he bound, even if apprised of the existence of these judg-ments, at his peril to inquire into questions upon the solution of which the judgment creditors' right to a lien depended. The present action was commenced in June, 1898. Prior thereto three of these judgment creditors had instituted actions to set aside the deed from Edward to Alice as against themselves, and they were very properly made parties defendant herein. By the commencement of these actions, and the filing of a lis pendens therein, these judgment creditors exercised their option to avoid the deed from Edward to Alice, and placed upon record a direct claim that their judgments were liens upon the land. The other judgment creditors, however, remained entirely passive. They neither commenced actions to set aside the deed in question, nor did they attempt to sell Edward's right, title, and interest in the land under their executions. It does not appear that any of the judgment creditors' actions to set aside the deed had been tried prior to the commencement of the present action. There is affirmative evidence that two of them had not, while as to the third we simply have a statement that judg-ment was rendered therein—date not given—vacating the deed as to these particular creditors. Thus, the contention necessarily is that the plaintiff, upon notice that some of Edward's judgment creditors claimed that the deed to Alice was fraudulent as to them, should not only have made these claimants parties defendant, but should also have made par-ties defendant those other judgment creditors who had made no such claim. The inquiry is natural, at this point, why should the latter have been made parties defendant? The respondent, in effect, answers: Upon the assumption that they might at some time make a similar claim, and, if they did, and were successful in sustaining it, would have a lien upon the land. These assumptions and possibilities were altogeth-er too slight and too remote to require the plaintiff to extend his search against Edward beyond the ordinary area, and to discover and bring in these subsequent judgment creditors. We may add that, even if there had been something more than notice of a claim, even if it had clearly appeared that the three judgment creditors' actions had ripened into judgment, the conclusion would have been the same. Each credit-or's bill stood upon its own basis. The deed might be voidable as to one, and not as to another. Notice that it had been set aside as to one was no evidence that it was void as to another. One judgment creditor's debt may have accrued prior to the making of the questioned deed; another's may have come into existence subsequently. The facts and proofs in one case may be different from those in another. It would be a dangerous rule—one that would lead to great uncertainty—which would require an attorney employed to foreclose a mortgage to go outside of the record, and, at his client's peril, correctly weigh such possibilities. The alternatives before him would be most embarrass-ing. If he brings the parties in, they may ask to be dismissed with costs; protesting that they made no claim, and should not have been vexed by a summons. If he fails to bring them in, a purchaser, as here, may ask to be relieved. The better rule is to permit the attorney to proceed in reliance upon the record. Then there can be no uncertainty. And no one—creditor or purchaser—can be prejudiced. When the attorney finds liens upon the record, he must make the lienors parties.

When one who has no record lien makes a direct claim of lien upon facts dehors the record, and supports that claim by the filing of a lis pendens, he also must be made a party.   So, too, when such a creditor issues his execution, and sells the right, title, and interest of the fraudulent grantor, he and the purchaser at that sheriff's sale should be made parties.   But where the judgment creditor has taken no step, made no claim, and asserted no right, the mere existence of his judgment, though the plaintiff mortgagee have notice that other creditors have charged fraud, does not make him a necessary party defendant. We fully recognize the rule that a purchaser at a judicial sale is entitled to a marketable title,—one free from reasonable doubt.   He should have a title that will, as Martin, J., said in McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527, "enable him to hold his land free from all probable claims by another, and one that, if he wishes to sell, would be reasonably free from any doubt which would interfere with the market value."   We think the purchaser here will get just such a marketable title.   That he will ever be disturbed is a mere possibility,—a very improbable and remote contingency,—one so slight and trivial that it ought not to relieve him from his purchase.   Cambrelleng v. Purton, 125 N. Y. 610, 26 N. E. 907.

We think, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and the purchaser's motion denied, with $10 costs.   All concur.