(65 App. Div. 388.)

PELL et al. v. PELL et al.

(Supreme Court, Appellate Division, First Department. November 22, 1901.)

PARTITION—REFEREE'S DEED—MARKETABLE TITLE—ACCEPTANCE BY PURCHASER.

　　In partition the purchaser refused to accept the referee's deed for alleged defects in the title to a part of the premises formerly a part of a highway. The parties to the partition claimed under conveyance describing the tract, including that in controversy, as beginning at the east side of the highway, at the northwest corner of the land of S., directly opposite to the southeast corner "of the land above conveyed." The reference to the "land above conveyed" was to a westerly tract, the southeast corner of which was in the center of the highway, and from the conveyances under which S. claimed it was evident that his northwesterly corner was in the center of the highway. The highway had long been discontinued, and the premises had been used by successive holders since 1851, and such holders had not been disturbed in their possession. *Held*, that the referee's deed tendered a good marketable title, such as such purchaser may be compelled to accept.

Appeal from special term, New York county.

Action by Herbert C. Pell and another against Charlotte Latrobe Pell and others. From an order directing James P. Robertson to complete his purchase of certain premises pursuant to his bid at a sale thereof under decree in partition (71 N. Y. Supp. 1092), he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Arthur Knox, for appellant.
E. Ellery Anderson, for respondents.

LAUGHLIN, J. The appellant refused to complete his purchase by paying the balance of the purchase price and accepting the referee's deed on account of certain alleged defects in the title to a part of the premises which was formerly part of the easterly half of the old Greenwich or Fitzroy road. The entire premises thus purchased by appellant have a frontage of $24^9/_{10}$ feet on the westerly side of Eighth avenue, and extend the same width in depth westerly

100 feet, the southerly line being 24⁹/₁₀ feet northerly of the northerly line of Thirty-Fourth street. The westerly line of the lot is in what was formerly the westerly half of said road, and to the extent of the width of the lot the boundary lines embrace the entire easterly half of the road. The specific objection to the title is that the parties to the partition suit did not own the fee to this part of the easterly half of the road. It is conceded that otherwise their title is good. It is also conceded that one Jacobus Van Orden .owned the premises upon either side of the road at the points in controversy, and owned the fee to that part of the road now in question, holding said premises as separate parcels divided by the road, and that upon his death, by a will duly admitted to probate in the county of New York on the 12th day of November, 1782, he devised the same to his daughter Magdalena Warner. The sufficiency of the record title depends upon the construction of a deed from Magdalena Warner and her husband to John Watts, dated May 3, 1791, in Liber 55 of Conveyances, at page 356, in the office of the register of the county of New York. It appears without controversy that whatever title passed to Watts by this conveyance was vested in the parties to the partition suit, and will be conveyed by the referee's deed, but it is contended by appellant that the deed to Watts did not convey the fee to the easterly half of the road. The conveyance to Watts embraced two tracts separated by this road, the one to the west consisting of 15 acres, and that to the east consisting of 19 acres, 3 rods, and 36 perches. The deed describes the westerly tract as:

"All that certain messuage or dwelling house and barn and tract or parcel of land situate and lying in the outward of the city of New York, and is bounded as follows, to wit: The easterly end of said tract is bounded on Greenwich road, between the land belonging to Lewis Scott and land in the occupation of Mrs. Ann McAdam, and is in breadth on the said road 7 chains and 60 links on a course south, 30 degrees and 30 minutes west; and then runs north, 61 degrees west, along the land of the said Lewis Scott. 17 chains, 14 links, being the length of the southerly side of said tract or parcel of land; thence across said tract, by a line parallel to the easterly line thereof, north, 30 degrees 30 minutes east, 7 chains and 60 links, to the land in the occupation of Mrs. McAdam; then along her land south, 61 degrees east, 19 chains and 74 links, to Greenwich road, aforesaid; and doth contain 15 acres of land."

And it describes easterly tract as:

"Also that certain other lot, piece, or parcel of land beginning at the east side of Greenwich road, at the northwest corner of the land of Lewis Scott, directly opposite to the southeast corner of the land above conveyed, and runs thence south, 60 degrees east, 12 chains and 75 links, to land of Isaac Schultz; then along his land north, 29 degrees east, 15 chains and 40 links; and thence north, 59 degrees west, 13 chains and 15 links, to the Greenwich road aforesaid; then along the said road south, 17 degrees west, 2 chains; .south, 30 degrees and 30 minutes west, 12 chains and 90 links; south, 21 degrees and 30 minutes west, 82 links, to the place of beginning,—containing 19 acres, 3 roods, and 36 perches, more or less, and is known in a division of the estate of Jacobus Van Orden, deceased, by lot number 2, and is bounded to the eastward by lot number 1, now belonging to Isaac Schultz, to the westward by Greenwich road, to the northward by land of Isaac Varian, and to the southward by land of Lewis Scott, and as the same was surveyed and laid out in the year 1786 by Casimer Goerch, surveyor."

It is manifest that by the first description the fee to the center of the road was conveyed with the westerly tract. It will also be observed that at least that part of the estate of Van Orden lying easterly of this highway was subdivided into lots, but the record does not contain the subdivision map or the survey upon which the same was made. After a description by metes and bounds, the easterly tract is designated as lot No. 2, bounded easterly by lot No. 1 and westerly by this road. The rule is well settled that where the owner of the fee to the center of the highway subdivides his land into lots, and conveys the same by reference to the lots, such conveyance carries the fee to the center of the highway.

It might, we think, be fairly inferred that in subdividing and conveying this estate, under these circumstances, the fee to the center of the highway would pass, unless excluded by the language of the deed. It is urged, however, that the words, "beginning on the east side of Greenwich road," in this conveyance, necessarily exclude the fee to the highway. If there were no other words qualifying or limiting this phrase, we might be obliged to sustain the appellant's contention; for it has been authoritatively adjudicated, by the court of appeals, on descriptions quite similar in that regard to the starting point and to the returning boundary, that the fee does not pass. Insurance Co. v. Stevens, 87 N. Y. 290, 41 Am. Rep. 361; Blackman v. Riley, 138 N. Y. 318, 34 N. E. 214.

In the case at bar, however, the words in the deed, "beginning on the east side of Greenwich road," are followed by another clause, which must be given force and effect in locating the point of commencement of this description. While the point of beginning is stated to be on the east side of Greenwich road, it is expressly stated that such point is "at the northwest corner of the land of Lewis Scott, directly opposite to the southeast corner of the land above conveyed." This reference to "the land conveyed" is to the westerly tract, the "southeast corner" of which was, as has been seen, in the center of the highway. It becomes important, therefore, to locate the northwest corner of the land of Lewis Scott. It appears that Scott obtained title to two tracts of adjoining land, one upon either side of this road, by sheriff's deed dated the 30th day of July, 1790, and recorded in the office of the secretary of state on the 18th day of November the same year, in Liber 23 of Deeds, at page 67. The description in that deed, so far as material, reads as follows: "All those two certain pieces or parcels of land situate, lying, and being in the outer of the city of New York, being separate the one from the other by the road leading to the Great Kills [being the road in question],—that is to say, one of the said tracts lying on the westerly side and the other on the easterly side of said road; the said tract lying on the westerly side of said road beginning on the northeast corner of that part of the land of Captain Thomas Clark which is on the same side of the said road, and running thence along the said road north," etc., by courses and distances returning to the place of beginning; "and the other tract, on the easterly side of said road, beginning at the southwesterly corner of the land of Jacob Van Orden, lying on the same side ;

thence south, along the said road," etc., by courses and distances returning to the place of beginning.

The precise description of the respective parcels by which Van Orden became invested with title is not shown in the record. It appears, however, that he owned the fee to the center of the highway, and that the lands were treated as two parcels divided by the highway. The inference is that the parcel upon each side extended to the center of the highway. If, therefore, the southwesterly corner of the easterly parcel of Van Orden's land, referred to in the deed to Scott, was in the center of the highway, it follows that Scott's easterly parcel embraced the easterly half of the highway, and the northwesterly corner of his land would therefore be a point in the center of the highway. This, we think, is the proper construction of this record title. The case is thus brought within the authority of In re Mayor, etc., of City of New York, 20 App. Div. 404, 46 N. Y. Supp. 832, which was affirmed on the opinion of this court (155 N. Y. 638, 49 N. E. 1100), where it was held that a deed the description of which read, "beginning at the northwest corner of lot number 4, opposite the southeast corner of lot number 1, on the east side of Bloomingdale road," conveyed the fee to the road.

The deed from Mrs. Warner conveyed all the lands in which the grantor appears to have been interested in that vicinity. It unquestionably passed the fee to the westerly half of the highway, and no reason is manifest for reserving to the grantor the naked fee to the easterly half, subject to the public easement. The legal presumption that a grantor does not intend to reserve to himself the fee to the soil of a public road is not overcome by any language found in this deed, indicating an intention in these circumstances to reserve such fee, but, on the contrary, it is sustained by the provision of the deed which describes the premises conveyed as a subdivision lot bounded westerly upon this highway, the entire fee to which at that time was in the grantor. Holloway v. Southmayd, 139 N. Y. 400, 34 N. E. 1047, 1052; Bank v. Nichols, 64 N. Y. 71.

In 1834 the highway was discontinued and closed by proceedings instituted by the city pursuant to the provisions of chapter 213 of the Laws of 1818, and in 1835 the city executed a quitclaim deed of all its right, title, and interest to Runyon W. Martin, who then owned the premises abutting on either side of the highway. The city, however, had not acquired the fee, and had no title which it could convey. In re John and Cherry Sts., 19 Wend. 659. Since the discontinuance and closing of this road, Martin and his successors in title have assumed to have and convey a complete record title to the premises in question, free from any easement. The road was 30 feet in width. The part of the premises the title to which is in controversy consists, therefore, of a strip of land 15 feet in width, running across the lot within a few feet of its westerly boundary. It appears, by affidavits which are not contradicted, that the entire yard is inclosed by fences and the walls of adjacent and adjoining buildings, and that the entire premises have been used by the successive holders of the chain of title from Mrs.

Warner, since 1851, one of whom in that year erected a four-story brick building on the front of the lot, and later sheds were erected in the rear, used in connection therewith. It is shown by affidavits that the tenants of those holding under this chain of title during the last 28 years have not been disturbed in their possession. It also appears that no trace of the heirs or legal representatives of Mrs. Warner can be found by a diligent search of the surrogate's office and register's office of the county of New York.

As appears by her father's will, Magdalena Warner was a married woman on the 12th day of November, 1782, and it may reasonably be presumed that she has long since died. Doubtless neither she nor her heirs have made any claim of title to these premises. It is also reasonably certain that the premises have been occupied under claim of record title by which good title has been acquired by adverse possession, even though Mrs. Warner retained the fee to the easterly half of the highway, and, if these facts clearly appeared, the purchaser could be compelled to take title. Ottinger v. Strasberger, 33 Hun, 466, affirmed in 102 N. Y. 692; Carrol v. McKaharay, 35 App. Div. 582, 55 N. Y. Supp. 113; Demarest v. Freidman, 61 App. Div. 576, 70 N. Y. Supp. 816; Hamershlag v. Duryea, 58 App. Div. 288, 68 N. Y. Supp. 1061; Faile v. Crawford, 30 App. Div. 537, 545, 52 N. Y. Supp. 353. The affidavits relating to adverse possession are not as complete or satisfactory on the point that title was claimed under written instruments in hostility to any other claim of title as we would like to sufficiently establish title by adverse possession to require a specific performance of appellant's bid upon that ground alone. It is a well-settled rule of law that possession is presumed to be in subordination to the true title, and that one claiming title by adverse possession must show that he and his predecessors have held the premises in hostility to the true owner. Doherty v. Matsell, 119 N. Y. 646, 23 N. E. 994; Deering v. Riley, 38 App. Div. 164, 56 N. Y. Supp. 704, affirmed in Same v. Reilly, 167 N. Y. 184, 60 N. E. 447; Ruess v. Ewen, 34 App. Div. 484, 54 N. Y. Supp. 357. We deem it unnecessary to decide whether this presumption has been sufficiently overcome to justify our compelling the purchaser to accept this title upon the theory that a sufficient title by adverse possession has been shown. But we are of opinion, upon a careful consideration of the entire case, that the referee tendered a good title, which is marketable and free from reasonable doubt. Such a title the purchaser at a judicial sale may be compelled to accept. Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Cambrelleng v. Purton, 125 N. Y. 610, 26 N. E. 907.

It follows that the order should be affirmed, with $10 costs and disbursements. All concur.