(39 Misc. Rep. 593.)

## VAN WINKLE v. VAN WINKLE et al.

(Supreme Court, Special Term, New York County.   January, 1903.)

1. DEEDS—PROPERTY CONVEYED—PRESUMPTIONS.

 To overcome the presumption that a conveyance of land bounded by an existing road carries the fee to the center thereof, there must be express words explicitly excluding the highway.

2. SAME—CONSTRUCTION.

 In case of ambiguity in a deed, the construction most favorable to the grantee must be adopted.

3. SAME—PRESUMPTION.

 The presumption that a deed of land bounded by an existing road carries the fee to the center thereof is strengthened by a recital of a purpose to dispose of the entire estate.

Action by Mary S. Van Winkle against Elizabeth M. Van Winkle and others for the partition of a plot of land included in the roadbed of a former lane known as Apthorpe's or Jauncey's Lane.   Judgment rendered.

The complaint alleged that the plaintiff and the defendant Elizabeth M. Van Winkle were seised and possessed in fee as tenants in common of the premises described. The complaint further alleged that Charles Ward Apthorpe in 1763 was the owner of about 200 acres of land, which included the premises in question, and which was called the "Apthorpe Farm," through which a lane known as Apthorpe's or Jauncey's Lane was laid out; that he died intestate in 1797, and that the lane was then and continued to be used as a public road until it was closed by act of law in the year 1867. In 1785 Charles Ward Apthorpe mortgaged the whole of said farm, including the roadbed of said lane, to secure the payment of $2,500 and interest. In 1797 Charles Ward Apthorpe died intestate, and seised of said farm and lane subject to said mortgage, leaving nine children and two grandchildren, the children of a deceased daughter. In 1798 the mortgagee foreclosed the mortgage, making all said children parties, and also Robert Troup as administrator of Charles Ward Apthorpe. In 1799 Hugh Williamson became seised and possessed of the whole of said farm, including the roadbed of said lane, as grantee from the sheriff on said foreclosure sale, and by the consent of all the parties to the foreclosure suit the purchase money paid by Williamson, and amounting to about $51,200, was paid to the administrator of Charles Ward Apthorpe. The complaint further alleged that the defendants, who were descendants of Charles Ward Apthorpe, claimed to have some interest in the premises sought to be partitioned, "the exact nature of which is unknown to this plaintiff except as is hereinafter set forth, and which is a cloud upon the title of the plaintiff and of said defendant Elizabeth M. Van Winkle to said premises." The answers of the claimant defendants set up on information and belief that, at the time of the conveyance to Williamson, he was attorney or agent for the heirs at law of Charles Ward Apthorpe, and that he took and held the conveyance on their behalf, and afterwards conveyed the said premises to said heirs at law. (Hugh Williamson, on November 16, 1802, as sole grantor, made deeds of lots Nos. 6 and 8, which were designated on a map that was offered in evidence. On November 30, 1802, releases were made in which all the heirs at law of Charles Ward Apthorpe joined with Hugh Williamson, of the same lots Nos. 6 and 8, which were conveyed by the same descriptions as in the deeds of November 16, 1802.) Upon the trial the deeds of the adjoining lands made by Williamson individually, and also by him as on November 30, 1802, were put in evidence; the claim of the plaintiffs thereon being

¶ 1. See Boundaries, vol. 8, Cent. Dig. §§ 123, 125.

that the title passed by Williamson's individual conveyance, and includes the cross road, and the claim of the defendants, the heirs of Apthorpe, being that these deeds by their recitals were conclusive as to the ownership by the children of Apthorpe of all the land of which the latter died seised, and excluded the cross road, and that if they did include the road the subsequent deeds by the grantees did not. The deeds of November 30, 1802, were in form partition deeds, in which all the children of Apthorpe and Williamson joined, and contained the following clause: "Whereas, the said parties of the first and second parts are the proprietors as tenants in common of all the real estate of which Charles Ward Apthorp, late," etc., "died seised at Bloomingdale aforesaid, and whereas, the said parties of the first and second parts, as proprietors of the said real estate, did, by virtue," etc., "proceed to make partition of said real estate among themselves: Now, therefore, this indenture witnesseth that in order to carry the said partition into effect as to the said party of the second part by enabling her to hold and enjoy the said lot of land to her," etc., "in severalty," etc.

The description of the lands conveyed upon the road were as follows: Deed to William Jauncey and Mary Jauncey of August 1, 1799: "Beginning at the corner of a field at the junction of the Bloomingdale Road with a cross road that leads to Harlem; thence running along the Bloomingdale Road [thence south; thence east]; thence north 36 degrees E. 8 chains 92 links; thence N. 53 degrees W. 26 chains to the beginning, containing 42 acres and 5 perches, according to a map made by Benjamin Taylor, one of the city surveyors of the City of New York, and hereunto annexed."

Deed to Anne Apthorpe of November 30, 1802: "All that lot of land situate at Bloomingdale in the Seventh Ward of the City and County of New York, distinguished by the lot number eight: Beginning at a stake by the fence on the public cross road, the corner of Mr. Jauncey's land; thence  *   *   * to the public road; thence north fifty-three degrees thirty minutes west, along the public road five chains and fifty links to the place of beginning, containing eleven acres and eleven perches."

Deed from Anne Apthorpe to Philip Brasher and Silvanus Miller of March 13, 1806: "All that certain lot," etc., "beginning at a corner formed by Mr. Jauncey's fence and the cross road leading to Harlem [thence south; thence east]; thence north, forty-four degrees east, seventeen chains, thirty links, to a mark on the fence and a sapling by the public road; thence along the road, North fifty-three degrees thirty minutes West five chains fifty links, to the place of beginning; containing twelve acres, one rood, and eighteen perches."

Deed to Charlotte Vandenheuvel, of November 30, 1802: "All that certain Lot of Land situate at Bloomingdale, in the seventh ward of the city and county of New York distinguished by Lot Number six Beginning at a Stake by the fence on the Cross road, leading to Haarlem fifty links, from the South Eastern Corner of the fence, thence running North forty-five Degrees East, parallel to the boundary fence, ten Chains sixty five Links. to Lot Number five, thence along the Southern boundary of Lot Number five, North, fifty-three Degrees, fifty minutes West, fourteen Chains ten Links, to the Eastern boundary of Lot Number four, Thence by Lot number four, South, forty-three Degrees West ten Chains sixty Links, to the Public Road; then South fifty three Degrees, thirty minutes East along the road thirteen Chains Eighty Links to the place of beginning, containing fourteen Acres, three Roods, ten Perches."

Release by heirs of Charlotte Vandenheuvel to Maria E. Hamilton, of May 20, 1835. following an allotment by commissioners in partition: "Beginning at a point at the North Westerly corner of the eighth avenue and a lane or road leading from the Bloomingdale road to the Harlem Commons and which lane or road forms the southerly boundary line of the tract of land in question in this cause, thence running northwardly along the said eighth avenue six hundred and sixty one feet and eight inches to the south-westwardly corner of said avenue and an intended street laid out on the map of the commissioners of streets and avenues as ninety-sixth street, thence westwardly along the southerly side of said intended ninety-sixth street,

four hundred and eleven feet, thence southwardly and parallel to the said eighth avenue, six hundred and forty four feet and eight inches, to a point on the aforesaid lane or road distant four hundred and eleven feet and three inches, westwardly from the place of beginning, and thence eastwardly along said lane or road four hundred and eleven feet and three inches to the place of beginning."

The claimant defendants' claim on the trial was, first, that neither the deeds nor the releases conveyed the roadbed of the lane; and, secondly, that Hugh Williamson took title as trustee for the heirs of Apthorpe. On a trial of this latter question before a jury, the jury found that Williamson did not act as agent or trustee, and did not take and hold the title in his name for the benefit of the heirs of Charles Ward Apthorpe, and, further, that after he became the grantee he did not dispose of the property at their request or for their use and benefit. The claimant defendants made a motion for a new trial before Mr. Justice O'Gorman of these issues found by jury, which motion was denied. The defendants also contended that the action for partition was improper, and should have been an action to determine adverse claims.

Edward Mitchell, for plaintiff.

William Mitchell (Henry F. Miller, of counsel), for defendant Elizabeth M. Van Winkle.

James A. Deering, for other defendants.

O'GORMAN, J. Hugh Williamson's title to all the premises in question is not disputed, and there is no reason to doubt that his title was absolute and unqualified. No conveyance from him to the Apthorpe's heirs has been proved, and the contention that such a conveyance must be presumed cannot prevail. The deeds in which the Apthorpe heirs joined were intended only as confirmatory deeds so as to operate by way of estoppel against claims that might thereafter be made by them or their descendants. If, therefore, the deeds in question were held to exclude the center of Apthorpe's lane, it would follow that the title to the roadbed is still in Hugh Williamson or his heirs, and not in the claimant defendants. I am of the opinion, however, that the conveyances carried the grant in each instance to the center of the road. The presumption is that a conveyance of land bounded by an existing street or road carries the fee to the center, and in case of ambiguity the construction most favorable to the grantee must be adopted. Matter of Ladue, 118 N. Y. 213, 23 N. E. 465. Nothing short of express words explicitly excluding the highway can have the effect of limiting the grant to the margin. Am. & Eng. Ency. Law (2d Ed.) 809; Matter of Mayor, 20 App. Div. 404, 46 N. Y. Supp. 832, affirmed 155 N. Y. 638, 49 N. E. 1100; Potter v. Boyce, 73 App. Div. 383, 77 N. Y. Supp. 24. The lots in question were sold by reference to a map, and the recital in the confirmatory deeds of a purpose to dispose of the entire estate clearly establishes that the conveyances extended to the center line of the abutting lane. Bissell v. N. Y. C. R. R. Co., 23 N. Y. 61. In none of the descriptions is reference made to the side of the road. The words, "beginning at a stake by the fence on the cross road," considered with the remainder of the description, do not necessarily indicate an intention to confine the grant to the side of the roadway. I find nothing in the deeds in question sufficient to overcome the presumption against

the grantor's intending to reserve the title to the soil of the highway, and I conclude that the defendants, other than the defendant Van Winkle, have no interest in or title to any part of the premises in question. Let a judgment be entered accordingly. The motion to set aside the findings of the jury and for a new trial is denied, with costs.

Judgment accordingly.